**MID–AMERICA ACCEPTANCE COMPANY, Appellant,**

v.

**LIGHTLE, Appellee.**

[Cite as *Mid–America Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–1061.

Decided Aug. 1, 1989.

592

*Gamble, Hartshorn, Grace, Alden & Close,* and *Eric J. Wittenberg,* for appellant.

*Beatty & Roseboro,* and *Mark J. Stanziano,* for appellee.

WHITESIDE, Judge.

Plaintiff-appellant, Mid–America Acceptance Company, appeals both from a judgment of the Franklin County Municipal Court dismissing plaintiff's complaint and awarding defendant-appellee, Pam E. Lightle, judgment based upon her counterclaim and also from an order denying plaintiff's motion for relief from the previous judgment. In this appeal, plaintiff raises the following assignments of error:

"I. Whether the trial court erred in ruling that the failure to appear of Appellant's counsel did not constitute excusable neglect pursuant to Rule 60(B)(1) of the Ohio Rules of Civil Procedure and whether the trial courts [*sic* ] erred in denying Appellant's Rule 60(B)(1) motion.

"II. Whether the trial court erred in awarding both treble damages under O.R.C. Section 1345.09 plus punitive damages.

"III. Whether the trial court erred in awarding $3,000 as reasonable attorney's fees pursuant to O.R.C. Section 1345.09.

"IV. Whether the trial court erred in awarding the Appellee both monetary damages and rescission of the contract under O.R.C. Section 1345.09.

"V. Whether the trial court erred in ruling that the Ohio Consumer Sales Practices Act does not supersede the common law action for fraud where an express statutory remedy is provided by O.R.C. Section 1345.48."

Defendant entered into a contract with Scandinavian Health Spa ("Scandinavian"), which later assigned its rights in this contract to plaintiff. Defendant testified that she went to Scandinavian in response to an advertisement that two people could join the health spa for the price of one. During her first visit to the spa, defendant spoke with Saul Ivy, a sales representative of Scandinavian, regarding the membership contract. She told him that a friend wanted to join with her, so that together they could take advantage of the "two-for-one" offer. Ivy indicated that it would be no problem, and, as a result, defendant signed a contract with Scandinavian, which indicates that the effective date of the contract is May 11, 1985, and that it expires May 11, 1989, making it a four-year contract on its face. Originally, defendant was the sole member on the contract, but was promised by Ivy that the friend's name would be added later.

Several days later, defendant returned to the spa with her friend but was informed by another employee of Scandinavian that the friend could not join under the "two-for-one" special. However, defendant testified that they were told to use the facilities and that the problem would be corrected. Two days later defendant went back to the spa to talk with Ivy about the problem. According to defendant's testimony, Ivy changed his original representation and stated instead that defendant's friend could not join to take advantage of the special. However, Ivy promised that Scandinavian would put defendant's husband's name on the contract, but defendant's friend could use his membership card. Relying upon these representations, defendant agreed to accept a membership card in her husband's name for the sole purpose of allowing her friend access to the spa.

After receiving the membership cards in the mail, defendant also received a notice that, in order to use the facilities, a driver's license must be shown along with the membership card. Specifically, defendant testified:

"A. * * * And we were waiting for our membership cards to come so she could go with me; and then after we got the membership cards, there was a notice up that you had to show your driver's license when you presented the card. And it didn't have her name on it, so she couldn't use it. .

"Q. So that at that point in time, when you saw that notice up, what did you believe with respect to the truth of what Mr. Ivie [sic] told you?

"A. Well, I knew we didn't have any chance of her using it; and, you know, I tried contacting him."

Defendant further testified that she made attempts with Scandinavian to correct the situation but that eventually she just quit making payments on the contract. She made an initial $50 payment and two subsequent payments of $44.93 each, making the total defendant paid on the contract $139.86.

Plaintiff, who bought the contract from Scandinavian, began making efforts to collect under the contract and sent defendant numerous past-due notices threatening legal action. Plaintiff instigated this action in May 1987, seeking $988.46, the remaining balance of the contract, interest and costs. Defendant filed an answer and a counterclaim alleging fraud on the part of Scandinavian, detrimental reliance and violations of the Consumer Protection Act of R.C. Chapter 1345. Defendant sought compensatory damages of $139.89, punitive damages of $5,000, and attorney fees.

Following five continuances, including at least one requested by defendant and one requested by the trial court, a trial date was set for August 1, 1988. Neither plaintiff nor its counsel appeared, but the trial court proceeded without them. The court dismissed plaintiff's complaint and received evidence

regarding defendant's counterclaim. Judgment was entered on August 5, 1988, finding that Scandinavian had committed fraud by inducing defendant to enter into a contract and that the contract as written with a duration of four years constituted a violation of the Consumer Protection Act. Plaintiff, the assignee of the contract, was found liable as the party in interest. The court awarded defendant $419.58, representing three times defendant's actual damages, $2,500 in punitive damages, and $3,000 for attorney fees.

Following receipt of notice of this judgment, plaintiff filed a motion for a new trial and also a motion to vacate the judgment. The motion for new trial, pursuant to App.R. 4(A), served to suspend the time for appeal until an entry denying such motion was filed.

The motion to vacate the judgment was predicated upon Civ.R. 60(B)(1), plaintiff contending that its failure to appear for the August 1, 1988 trial date constituted excusable neglect. The trial court denied this motion at the same time it overruled the motion for new trial. Plaintiff appealed both final orders.

On January 20, 1989, defendant filed a motion to dismiss the appeal contending that plaintiff had failed to include a transcript in the record on appeal. Plaintiff filed a memorandum in opposition and a motion to supplement the record. The motion to supplement was granted by this court. Plaintiff timely complied. To the extent that defendant's motion to dismiss has not been heretofore expressly denied, it is hereby overruled.

Plaintiff's assignments of error will be addressed by discussing the fourth assignment of error first. Both parties agree that the contract between Scandinavian and defendant constitutes a "prepaid entertainment contract" as defined in R.C. 1345.41. As such, R.C. 1345.42(B)(3) applies and requires that:

"(B) Prepaid entertainment contracts shall:

" * * *

"(3) Not have a duration of service other than a duration that is a precisely measured period of years or any definite part of a year and *shall not have a duration of service for a period in excess of three years* [.]" (Emphasis added.)

Furthermore, R.C. 1345.48(A) provides:

"Failure to comply with sections 1345.41 to 1345.50 of the Revised Code constitutes a deceptive act or practice in connection with a consumer transaction in violation of section 1345.02 of the Revised Code."

The contract at issue here was written with an effective date of May 11, 1985, and an expiration date of May 11, 1989, thereby constituting a four-year

prepaid entertainment contract. Furthermore, plaintiff, in paragraph two of its reply to defendant's counterclaim, specifically " * * * admits that this contract is for a period of four (4) years." Therefore, this contract on its face violated R.C. 1345.42(B)(3) and, pursuant to R.C. 1345.48, " * * * constitutes a deceptive act * * * in violation of section 1345.02 of the Revised Code."

Plaintiff contends that defendant was not entitled to both rescission of the contract and monetary damages. Plaintiff contends that R.C. 1345.09(B) allows the injured party either to rescind the contract which has been found to violate R.C. 1345.02 or 1345.03 *or* to recover three times the amount of his or her actual damages, but not both. By granting defendant treble damages and allowing defendant to rescind the contract, plaintiff contends that the trial court erred.

R.C. 1345.09(A) and (B) provide the following remedies for a violation of R.C. Chapter 1345:

"(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages.

"(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended."

In order for treble damages to be available as a remedy under R.C. 1345.09(B), there needs to be either a violation of an act or practice declared to be deceptive or unconscionable by a rule adopted pursuant to R.C. 1345.-05(B)(2) or an act or practice declared by a court of this state to be in violation of either R.C. 1345.02 or 1345.03.

Here, there has been a violation of R.C. 1345.42(B)(3) requiring that prepaid entertainment contracts have a duration of no longer than three years, as this contract has a duration of four years. Although this four-year duration constitutes a deceptive act in violation of R.C. 1345.48, this violation does not fall under either of the two violations enumerated in R.C. 1345.09(B), as it has not been an act or practice declared to be deceptive by a rule adopted

pursuant to R.C. 1345.05(B)(2) or an act or practice previously determined by a court of this state to violate R.C. 1345.02 or 1345.03.

This conclusion is supported by the common principle of statutory construction, *expressio unius est exclusio alterius,* meaning the expression of one thing is the exclusion of another. Here, R.C. 1345.09(B) expressly provides only two instances where treble damages may be appropriate. Although a prepaid entertainment contract with a duration of four years constitutes a deceptive act in violation of R.C. 1345.02, it has not been so declared by a rule adopted pursuant to R.C. 1345.05(B)(2) and until this decision by this court it has not been declared by a court of this state to violate R.C. 1345.02 or 1345.03. Therefore, the mere fact that the prepaid entertainment contract has a duration of four years does not, in this case, permit the consumer to recover treble damages.

■ However, the determination of whether R.C. 1345.09(B) applies in the instant case does not end there. R.C. 1345.05(B)(2) authorizes the Attorney General to promulgate " * * * substantive rules defining with reasonable specificity acts or practices that violate * * * " R.C. 1345.02 or 1345.03. In accordance with R.C. 1345.05(B)(2), Ohio Adm.Code 109:4–3–04 was promulgated and provides in pertinent part:

"(A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to use the word 'free' or other words of similar import or meaning, except in conformity with this rule. * * *

"(B) For the purposes of this rule, all references to the word 'free' shall include within that term all other words of similar import and meaning. Representative of the word or words to which this rule is applicable would be the following: 'Free;' 'Buy 1, Get 1 Free;' '2 for 1 Sale;' '50% Off with Purchase of 2.' * * *

"(C) When using the word 'free' in a consumer transaction, *all the terms, conditions, and obligations upon which receipt and retention of the 'free' goods or services are contingent shall be set forth clearly and conspicuously at the outset of the offer.* Terms, conditions, and obligations of the offer must be printed in a type size half as large as the word 'free,' and all of the terms, conditions, and obligations should appear in close conjunction with the offer of 'free' goods or services." * * * (Emphasis added.)

Therefore, a consumer transaction which involves, for example, a "buy one, get one free" offer must specifically set forth the terms and conditions of the offer in such a manner as to be clear and conspicuous to the consumer. If the offer fails to do so, it is a deceptive act in violation of the rule, and the remedy provision of R.C. 1345.09(B) applies.

In the case *sub judice*, not only did the contract fail to set forth any conditions of the "two-for-one" offer, but a representative of Scandinavian repeatedly assured defendant that she and a friend could participate in the special. Only after these repeated assurances did defendant learn that the representations made to her were false. From the evidence, it is clear that Scandinavian did not clearly and conspicuously set forth the conditions and terms of their "two-for-one" special, and thus committed a deceptive act as specifically defined in Ohio Adm.Code 109:4–3–04(C). Based upon this violation, R.C. 1345.09(B) is the appropriate provision to determine defendant's remedies.

R.C. 1345.09(B) provides that " * * * the consumer may rescind the transaction or recover * * * three times the amount of his actual damages * * *." Plaintiff contends that it was an error to allow defendant to rescind the contract and also recover treble damages.

■ At common law, generally, a party who has been fraudulently induced to enter into a contract has the option of rescinding the contract or retaining the contract and suing for damages based upon the tort of fraudulent inducement. See *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, and *Columbus & Toledo RR. Co. v. Steinfeld* (1884), 42 Ohio St. 449. An election is imposed because it is inconsistent to allow the defrauded party to rescind the contract and yet at the same time receive the benefits of the contract. In other words, the contract is voidable at the option of the defrauded party.

■ If rescission is elected, it necessarily follows that the defrauded party is entitled to recover whatever he has already paid on the contract. This recovery is necessary because rescission is not merely a termination of the contract; it is an annulment of the contract. The primary purpose of "rescission" is to restore the parties to their original positions as if the contract had never been formed. Returning the parties to status quo is an integral part of rescission, and in doing so it is generally necessary to award the party seeking rescission at least his out-of-pocket expenses. These out-of-pocket expenses are properly characterized as "damages" for they represent the loss not cured by the cancellation of the contract that defendant has suffered as a result of the fraudulent inducement.

■ The "actual damages" referred to in R.C. 1345.09(B) represent the legislature's codification of the common-law election between rescission and retention of the contract while recovering damages. As stated previously, it is inconsistent to allow the consumer to rescind the contract while at the same time retaining rights in that contract and suing for damages. Thus, R.C.

1345.09(B) allows the consumer who has been fraudulently induced to enter into a contract either to rescind that contract and return the parties to the position in which they would have been if there had been no contract or retain the contract and sue for damages based upon the fraudulent inducement.

It follows from this interpretation of R.C. 1345.09(B) that only if the consumer elects to retain his rights under the contract may he recover three times his actual damages. However, if the consumer elects rescission, while he is entitled to be restored the amounts paid to the defrauding party, he is not entitled to three times that amount.

■ By awarding defendant $139.86 (the amount she had already paid on the contract), the court would be merely "restoring the benefit received by" Scandinavian. An award of $139.86 to defendant is necessary in order to restore the parties to their original position prior to the formation of the contract.

However, the trial court did err in awarding three times that amount. Treble damages, as provided for in R.C. 1345.09(B), can be awarded only in the alternative of rescission representing the election at common law between rescission and retention of the contract. Therefore, the trial court erred in awarding defendant $419.58, which represents three times defendant's out-of-pocket expenses in relation to rescission of the contract. Defendant was entitled only to the $139.86 representing the amount needed to restore the benefit received by plaintiff after rescission of the contract. Accordingly, plaintiff's fourth assignment of error is well taken.

■ Turning to the second and fifth assignments of error, plaintiff raises two interrelated issues that will be addressed together. By its fifth assignment of error, plaintiff contends that R.C. 1345.48 provides an express statutory remedy, thereby superseding defendant's common-law fraud claim. As a result, plaintiff contends by its second assignment of error that the trial court erred in awarding both the statutory treble damages and punitive damages.

In addition to awarding defendant damages under the statute, the trial court also determined that Scandinavian had fraudulently induced defendant to enter into the contract. This common-law fraud perpetrated upon defendant is separate and distinct from the statutory violations. In inducing defendant to sign the contract by representing to her (1) that her friend could join with defendant under the "two-for-one" special when, in fact, that offer was limited to family members, and later (2) that her friend could use defendant's husband's membership card to use the health spa facilities, Scandinavian fraudulently induced defendant to enter into that contract.

Plaintiff, who is subject to all of the same defenses as Scandinavian, makes no contention that the evidence does not support a finding of common-law fraud. Rather, plaintiff contends that any award of which defendant was entitled under the common-law fraud claim is superseded by the Consumer Protection Act.

Nowhere in the Consumer Protection Act is it either expressly stated or implied that the Act is intended to supersede or abrogate any common-law remedies already available to the consumer. Rather, exactly the opposite is expressly set forth in R.C. 1345.13, which provides:

"The remedies in sections 1345.01 to 1345.13 of the Revised Code, are *in addition to remedies otherwise available for the same conduct under state or local law.*" (Emphasis added.)

Furthermore, R.C. 1345.50 has a similar provision with respect to violations of the prepaid entertainment contract provisions contained in R.C. 1345.41 to 1345.50. It is clear that the legislature fully intended for the remedies available to the consumer in R.C. 1345.09 to be in addition to remedies already available such as damages for common-law fraud.

Courts will not presume that a statute is intended to abrogate or supersede the common law unless that intention is expressly declared by the legislature or necessarily implied by the language of the statute. See *LaCourse v. Fleitz* (1986), 28 Ohio St.3d 209, 212, 28 OBR 294, 297, 503 N.E.2d 159, 161, and cases cited therein. Not only did the legislature not set forth such intention, it expressly provided otherwise in R.C. 1345.13 and 1345.50.

Plaintiff's contention that the Consumer Protection Act superseded defendant's remedies under a common-law fraud action is without merit. Accordingly, plaintiff's fifth assignment of error is not well taken.

By the second assignment of error, plaintiff contends that it was error for the trial court to award both the statutory treble damages and punitive damages. Plaintiff's contention is predicated upon two different bases. First, as addressed in the fourth assignment of error, plaintiff contends that the award of treble damages is inappropriate where, as here, defendant elected rescission. Second, as addressed in the fifth assignment of error, plaintiff contends that punitive damages, a common-law remedy, were superseded by the Consumer Protection Act. As we held in the fourth assignment of error, treble damages under the statute were not appropriate in this case as defendant sought rescission, not retention of the contract.

However, even if treble damages had properly been awarded, it would not preclude a finding of punitive damages. As we held in the fifth assignment of error, the Consumer Protection Act does not supersede or abrogate any

common-law remedy the consumer may have in addition to the statutory remedies available. Thus, in the appropriate case, treble damages under the statute and punitive damages may both be proper.

Turning to the award of punitive damages in this case, merely because they may be proper under the common-law fraud action, it does not automatically follow that defendant is entitled to punitive damages.

In other words, while defendant may be able to show that she was fraudulently induced to enter into the contract with Scandinavian, without additional proof, defendant is not automatically entitled to punitive damages.

The Ohio Supreme Court held in the third paragraph of the syllabus of *Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883:

"In each case of alleged fraud the plaintiff, in order to be awarded punitive damages, must establish not only the elements of the tort itself but, in addition, must either show that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious."

See, also, *Logsdon v. Graham Ford Co.* (1978), 54 Ohio St.2d 336, 339, 8 O.O.3d 349, 351, 376 N.E.2d 1333, 1335, a *per curiam* opinion, wherein the court held:

" 'Consistently with the general rule as to the allowance of exemplary or punitive damages, the jury may, in a fraud action where there is gross or malicious fraud or something showing a very corrupt condition of affairs, go beyond the rule of mere compensation and award exemplary or punitive damages, even though the defendant may have been punished criminally for the same wrong. However, a bare case of fraud or constructive fraud does not warrant the assessment of exemplary damages.' " (Citation omitted.)

Therefore, gross or egregious fraud may support an award of punitive damages but simple fraud does not. In order to prove that punitive damages are appropriate, it must be shown that the fraud contained an element of malice or ill will.

Defendant did not present any evidence which would elevate the fraud to the level contemplated by the court in *Combs Trucking* or *Logsdon*. There was no evidence presented above that needed to establish a "bare case of fraud." Defendant did not establish that the fraud was aggravated by malice or ill will on the part of Scandinavian, nor did defendant demonstrate that the fraudulent inducement was "particularly gross or egregious."

The case *sub judice* is distinguishable from the recent decision in *Digital & Analog Design Corp. v. North Supply Co.* (1989), 44 Ohio St.3d 36, 540

N.E.2d 1358. While the court stated that malice may be inferred from conduct, the conduct in that case was significantly different than here. The evidence in *Digital* was sufficient to show that defendant had planned its action in advance, causing plaintiff to lose profits and resulting in possible harm to plaintiff's reputation. *Digital* involved intentional seizure of property which the defendant knew it had no right to seize. Here, defendant presented no evidence to show such harm as to support an award of punitive damages.

The trial court did not state its basis for awarding $2,500 in punitive damages, and the evidence does not support such an award. Accordingly, plaintiff's second assignment of error is well taken.

■■ By the third assignment of error, plaintiff contends that the trial court erred in awarding defendant $3,000 in attorney fees. Plaintiff raises two issues: (1) that defendant was not entitled to attorney fees; and (2) even if defendant was so entitled, $3,000 is not reasonable under the evidence presented. Each issue will be discussed separately.

R.C. 1345.09(F)(2) provides:

"The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:

" * * *

"(2) The supplier has knowingly committed an act or practice that violates this chapter."

"Supplier" is defined in R.C. 1345.01(C) as follows:

" 'Supplier' means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer."

R.C. 1345.01(A) defines "consumer transaction" as follows:

" 'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."

From these definitions, it is clear that Scandinavian was a "supplier" for purposes of determining whether attorney fees could be awarded pursuant to R.C. 1345.09(F)(2). By contracting with defendant for defendant's use of Scandinavian's health spa facilities, Scandinavian was a seller of a service to an individual. Furthermore, the purpose of this service was primarily personal in nature.

■ Since Scandinavian is a "supplier," we must next determine whether the evidence permits a finding that it " * * * knowingly committed an act or practice that violates * * * " R.C. Chapter 1345. R.C. 1345.01(E) defines "knowledge" as " * * * actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness."

A supplier must have knowledge or actual awareness that the act or practice is wrong or in violation of the law. However, it does not automatically follow that the supplier must have knowledge or actual awareness that the act violates the consumer protection statutes. See *Bierlein v. Alex's Continental Inn, Inc.* (1984), 16 Ohio App.3d 294, 298–299, 16 OBR 325, 330, 475 N.E.2d 1273, 1279–1280, but, cf., *Brooks v. Hurst Buick–Pontiac–Olds.– GMC, Inc.* (1985), 23 Ohio App.3d 85, 90, 23 OBR 150, 155, 491 N.E.2d 345, 351.

In this case, the trial court found that the contract between Scandinavian and defendant was four years in duration and, thus, violative of R.C. 1345.- 42(B)(2). Defendant presented no evidence to establish that Scandinavian knew that such a contract was unlawful or prohibited by statute. Making a four-year contract is generally permissible under common law. In other words, the four-year contract in this case is unlawful only because it violated R.C. 1345.42, which creates a statutory wrong. Under this analysis, only if it were shown that Scandinavian was aware of either R.C. 1345.42(B)(3) prohibiting prepaid entertainment contracts over three years, or otherwise knew of the prohibition, would such knowledge create a knowing violation of that statute; and, unless such knowledge were proved, attorney fees would not be properly awarded based upon a violation of R.C. 1345.42(B)(2).

■ The trial court also found that Scandinavian had fraudulently induced defendant into entering into the contract. This fraudulent inducement in addition to constituting common-law fraud also violates the Consumer Protection Act. R.C. 1345.02(A) provides in pertinent part:

"No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

Furthermore, R.C. 1345.03 provides as follows:

"(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. * * *

"(B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

"* * *

"(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment[.]"

In its findings, the trial court did not specify upon what evidence the finding of fraudulent inducement was predicated, or what statute Scandinavian violated. However, a review of the record supports such a finding under either statute, in addition to a finding of common-law fraud, as the elements of fraud include an unfair, deceptive, or unconscionable act.

Defendant specifically testified that, initially, representations were made to her by an employee of Scandinavian that she and a friend would be permitted to take advantage of the "two-for-one" special. As defendant was subsequently informed, this representation was completely untrue and deceptive. Defendant further testified that at this point she was prepared to cancel the contract until the same employee represented to her that "everything could be worked out" with defendant's friend using a membership card in defendant's husband's name. Specifically, defendant stated:

"Q. Had he not told you—Had Mr. Ivie [*sic*] not told you the things he did tell you, is it your testimony that you would have cancelled the contract?

"A. I would have never signed it if he hadn't of [*sic*] told me she could use it."

By making deliberate false and misleading representations to defendant, Scandinavian caused defendant to rely to her detriment. These representations were deceptive and unconscionable, therefore falling under either R.C. 1345.02(A) or 1345.03(B)(6) and supporting an award of attorney fees pursuant to R.C. 1345.09(F)(2). Scandinavian knew that these statements were deceptive at the time that they were made. Thus, the supplier, Scandinavian, "knowingly committed an act or practice that violates" R.C. Chapter 1345. Attorney fees would be properly awarded based upon this violation.

The question remains of whether a $3,000 award for attorney fees was reasonable based upon the evidence submitted at trial. That evidence demonstrates that legal fees incurred through April 26, 1988, were $1,889.50. The trial court, at the end of the trial, stated:

"* * * the Court is of the opinion that defendant is entitled to receive or recover $139.86 in triplicate as a refund. And, in addition thereto, she is entitled to recover from Scandinavian the sum of—let's see—$1,889.50 as of 4–26–88, so make that $3,000 as of this date for legal services incurred, and $2,500 punitive damages, plus interest and costs."

The evidence supports an award of attorney fees in the amount of $1,889.50; however, the trial court's decision to increase that award to $3,000 is unsup-

ported by competent, credible evidence. Based upon the evidence presented by defendant at trial, reasonable attorney fees could not properly be awarded in the amount of $3,000. Accordingly, plaintiff's third assignment of error is well taken.

Turning to the first assignment of error, plaintiff contends that the trial court erred in denying plaintiff's motion to vacate the judgment on the grounds of excusable neglect. Even if it were error to deny plaintiff's motion for relief from judgment, it was not prejudicial.

Civ.R. 60(B) provides in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * * The motion shall be made within a reasonable time, and for reasons (1) * * * not more than one year after the judgment, order or proceeding was entered or taken. * * * "

The decision whether to grant relief from judgment is within the sound discretion of the trial court and will not be disturbed on appeal unless a clear abuse of discretion is shown. See *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122, and cases cited therein.

The court held in paragraph two of the syllabus of *GTE Automatic Electric v. ARC Industries* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113:

"To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."

Both parties agree that plaintiff's motion for relief was timely filed. Therefore, the third prong of *GTE* is met.

Turning to the second prong of *GTE*, it must be determined if plaintiff's missing the scheduled trial was "excusable neglect." In making this determination, we are mindful of the following interpretation enunciated by the court in *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 248, 18 O.O.3d 442, 445, 416 N.E.2d 605, 609:

"In our view, the concept of 'excusable neglect' must be construed in keeping with the proposition that Civ.R. 60(B)(1) is a remedial rule to be liberally construed, while bearing in mind that Civ.R. 60(B) constitutes an attempt to 'strike a proper balance between the conflicting principles that

litigation must be brought to an end and justice should be done.'" (Citations omitted.)

It is further the policy of courts in Ohio to decide cases on their merits whenever possible, for as the court held *per curiam* in *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351, 6 OBR 403, 406, 453 N.E.2d 648, 651:

"The primary objective and function of our courts is to adjudicate cases on the merits by applying the substantive law whenever possible, and not to adjudicate cases with finality upon a strained construction of procedural law yielding unjust results."

The standard for determining what conduct will give rise to "excusable neglect" is set forth in the syllabus of *Griffey, supra,* where the court held:

"A trial court does not abuse its discretion in overruling a Civ.R. 60(B)(1) motion for relief from a default judgment on the grounds of excusable neglect, if it is evident from all of the facts and circumstances in the case that the conduct of the defendant, combined with the conduct of those persons whose conduct is imputable to the defendant, exhibited *a disregard for the judicial system and the rights of the plaintiff. (Colley v. Bazell* [1980], 64 Ohio St.2d 243, 18 O.O.3d 442, 416 N.E.2d 605, and *GTE Automatic Electric v. ARC Industries* [1976], 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, followed.)" (Emphasis added.)

Inexcusable neglect does not necessarily mean that the party's disregard is intentional. However, the greater the degree of willfulness of the movant, the less likely it is that his conduct will be characterized as "excusable neglect." Our determination necessarily involves an examination of all the facts and circumstances surrounding plaintiff's conduct to determine if it rises to the level of a complete disregard of the judicial system. In doing so, any doubt should be resolved in favor of the movant. *GTE, supra.*

The record indicates that this case had been set for trial at least six times, including August 1, 1988, the date which plaintiff admittedly missed. In support of its motion for relief from judgment, plaintiff's counsel supplied the trial court with an affidavit stating in pertinent part, as follows:

"3. That the above-referenced case had been scheduled for trial for at least eight times, including the last trial date of August 1, 1988.

"4. That on the seven times that the instant action had been continued, Plaintiff had only specifically requested one of the continuances and this was due to a conflict in Affiant's schedule.

"5. That on at least four separate occasions, Affiant and a representative of Mid–America Acceptance Co. appeared in court fully prepared to try the

instant action. However, on the occasions that Affiant appeared, the case was continued by the Court's own motion.

"6. Due to a clerical error, the latest trial date of August 1, 1988 for the instant action was not placed on Affiant's calendar. This was due, in part, to the fact that at the time that the notices were issued by the Court informing Affiant of the new trial date, Affiant was in the process of changing secretaries."

Defendant does not dispute that plaintiff had appeared on the prior trial dates, but, rather, dismisses this fact as irrelevant. However, those appearances are very relevant for this is not a case where, as in *Griffey, supra,* defendant's counsel did not even answer plaintiff's complaint, thus indicating there was no intention to defend the action.

Here, plaintiff filed a complaint against defendant, who then counterclaimed against plaintiff. Plaintiff answered the counterclaim within the prescribed time and denied the allegations of defendant's counterclaim. Furthermore, after receiving notice of the court's decision to dismiss plaintiff's complaint and awarding judgment to defendant upon her counterclaim, plaintiff was diligent in pursuing its legal remedies.

Plaintiff's counsel admits that he received notice of the trial date of August 1, 1988, but that, because of a clerical error, his staff neglected to note it on his calendar. Plaintiff's failure to appear for the trial date was "excusable neglect." His behavior does not rise to the level of inexcusable. More specifically, plaintiff's conduct, considering all of the facts and circumstances, cannot be characterized as conduct which " * * * exhibited a disregard for the judicial system and the rights of * * * [the other party]." *Griffey, supra.* The trial court abused its discretion in determining that plaintiff's conduct did not constitute "excusable neglect" within the meaning of Civ.R. 60(B)(1).

■  In order to prevail upon a Civ.R. 60(B) motion, plaintiff must further establish that it has a meritorious claim or defense. In *Volodkevich v. Volodkevich* (1988), 35 Ohio St.3d 152, 154, 518 N.E.2d 1208, 1210, the court held that, in order to establish a meritorious defense for purposes of Civ.R. 60(B), the movant need not prove that he would prevail on the merits of his claim. Rather, the movant is required only to allege a meritorious claim or defense. See, also, *Colley, supra,* fn. 3.

Plaintiff established a meritorious defense to certain aspects of this case, but not to all. Plaintiff has demonstrated that punitive damages were not proved in this case (see Assignments of Error Two and Five), that defendant has not proved $3,000 of attorney fees (see Assignment of Error Three), and

further that treble damages are not appropriate when rescission is awarded (see Assignment of Error Four).

However, plaintiff's claimed defenses to the violations of the Consumer Protection Act of R.C. Chapter 1345 are not meritorious. Plaintiff specifically admits in its reply to defendant's counterclaims that the contract was for a four-year duration. Prepaid entertainment contracts with a duration of more than three years are *per se* illegal. R.C. 1345.42(B)(3). Plaintiff contends that the original contract was later "modified" to two contracts, each with a duration of two years, one for defendant and one for her husband, which defendant was told could be used by her friend. Later, Scandinavian informed defendant that her friend could not use defendant's husband's membership card. The contract was not "modified," since Scandinavian refused to implement the new terms to which defendant agreed. Actually, what was contemplated was to substitute two separate two-year contracts, one with defendant and one with her husband (which her friend could use), for the original four-year contract. This was never implemented by new written contracts, and plaintiff indicated it would refuse to permit use by the friend. As there was no "meeting of the minds," there was no substituted contract, making the four-year contract the only one purportedly binding upon the parties.

Plaintiff further contends that, even if defendant was fraudulently induced by Ivy, Ivy was acting outside his scope of employment and, thus, Scandinavian could not be held liable. This contention has no merit whatsoever. Ivy was a sales representative for Scandinavian who was purportedly authorized to bind Scandinavian contractually. Simply because he performed his authorized tasks incorrectly, it does not follow that Ivy was acting outside his apparent scope of authority. Thus, Scandinavian is liable for the acts of its agent Ivy. Accordingly, plaintiff does not have any meritorious defenses with respect to the fraud claims of defendant.

Although plaintiff did establish a meritorious defense with respect to the award of punitive damages, attorney fees, and treble damages, denial of relief from those parts of the judgment was not prejudicial because direct appeal from the judgment was available and taken and the error cured by our determination of plaintiff's second, third, and fourth assignments of error. Accordingly, plaintiff's first assignment of error is not well taken.

For the foregoing reasons, plaintiff's first and fifth assignments of error are overruled, while the second, third, and fourth assignments of error are sustained, the judgment of the Franklin County Municipal Court is reversed,

and this cause is remanded to that court for further proceedings consistent with the law in this opinion.

*Judgment reversed,*
*and cause remanded.*

STRAUSBAUGH and YOUNG, JJ., concur.