OPINION
Steven C. and Susan Cannell, Roy and Jean St. John, and Richard E. and Cynthia R. Sheetz, plaintiffs-appellants, appeal a judgment of the Franklin County Court of Common Pleas granting a motion for relief from judgment filed by Robert L. Bates Co. and Robert L. Bates (individually), defendants-appellees.
Appellees were engaged in the design and construction of private residences. In late 1996 and early 1997, appellants contracted with appellees to build homes in Dublin, Ohio. However, appellees failed to complete construction of the homes. On July 19, 1999, appellants filed separate actions against appellees, alleging breach of contract, breach of oral and/or implied contract, conversion, unjust enrichment, fraud, and violations of the Ohio Consumer Sales Practices Act, arising out of the construction and design of their homes. In their respective actions, appellants each prayed for damages in excess of $10,000,000. The cases were thereafter consolidated.
Service was perfected upon appellees, however, appellees failed to file an answer. On September 24, 1999, appellants filed a motion for default judgment against appellees, which the trial court granted on October 4, 1999. A damages hearing was held before a magistrate who found that appellees had breached their contracts with appellants and had also defrauded them. The Cannells were awarded $676,967.85, the Sheetzes $1,322,848.50, and the St. Johns $1,407,680, plus court costs and post-judgment interest. The trial court entered judgment on the magistrate's decision on January 6, 2000.
On May 23, 2000, appellees filed a motion to vacate the default judgment pursuant to Civ.R. 60(B)(1). Appellees claim that in March 1998, Mr. Bates suffered a stroke, thereby constituting excusable neglect in failing to answer and defend the action on behalf of his company. Appellees also claim they had possible counterclaims against appellants, including fraud, conspiracy, defamation, conversion, and breach of contract. Appellees attached to their motion to vacate an affidavit from Mr. Bates and letters from two doctors documenting Mr. Bates' medical condition. On July 21, 2000, the trial court granted appellees' motion to vacate the default judgment. Appellants appeal the trial court's judgment, asserting the following assignments of error:
 ASSIGNMENT OF ERROR NO. 1 The trial court erred in granting Defendant Robert L. Bates Co., et al.'s Motion to Vacate Default Judgment, because the trial court abused its discretion in granting the Rule 60(B) Motion.
 ASSIGNMENT OF ERROR NO. 2 The trial court erred in granting Defendant's Motion to Vacate Default Judgment without first holding an evidentiary hearing.
Appellants argue in their first assignment of error that the trial court erred in granting appellees' Civ.R. 60(B) motion to vacate. To prevail on a Civ.R. 60(B) motion, the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken. GTE Automatic Electric v. ARC Industries
(1976), 47 Ohio St.2d 146. The decision to grant a Civ.R. 60(B) motion for relief from judgment rests within the sound discretion of the trial court and may be upset on appeal only upon a showing of an abuse of discretion. Doddridge v. Fitzpatrick (1978), 53 Ohio St.2d 9. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Appellants do not contest that appellees had a meritorious defense or claim to present or that the motion was timely made within one year after the judgment. Thus, the only argument by appellants is that the trial court erred in finding that appellees met the second prong under GTE
because appellees were not entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5). Appellees contend in their motion for relief from judgment that they were entitled to relief from judgment pursuant to Civ.R. 60(B)(1) due to excusable neglect. Mr. Bates asserted that he had become partially disabled as a result of his stroke and his weakened condition made it difficult to address professional matters, including the present lawsuit. Appellants contend there is no evidence to support Mr. Bates' claim that his medical condition rose to the level of excusable neglect.
There is no bright-line test to determine whether a party's neglect is excusable or inexcusable but, instead, the analysis will turn on the facts and circumstances presented in each case. Colley v. Bazell (1980),64 Ohio St.2d 243, 248. Nonetheless, neglect is inexcusable when a movant's inaction exhibits a complete disregard for the judicial system or that of an opposing party. GTE, supra, at 153. Excusable neglect has been established when a court has found unusual or special circumstances justified the neglect. However, courts generally suggest if a party or his attorney could control or guard against the happening or circumstance, the neglect is not excusable. Vanest v. Pillsbury Company
(1997), 124 Ohio App.3d 525. Furthermore, the greater the degree of willfulness of a movant, the less likely his conduct will be characterized as "excusable neglect." Mid-America Acceptance Co. v.Lightle (1989), 63 Ohio App.3d 590.
After reviewing the entire record, appellants' motion for default judgment, and appellees' motion for relief from judgment, including the affidavits and letters attached thereto, we find that the trial court abused its discretion in granting appellees' motion for relief from judgment. First, the record is void of any evidence indicating that Mr. Bates was not competent to conduct business matters to the extent he was unable to answer the complaint herein. See, e.g., Fouts v. Weiss-Carson
(1991), 77 Ohio App.3d 563 (no excusable neglect when there are no operative facts as to the severity of the mental condition or whether the condition would have rendered the party incompetent for purposes of comprehending legal obligations). In paragraph three of the affidavit attached to his motion, Mr. Bates averred only that he suffered a "serious stroke, which has left me unable to work." Although he may have been unable "to work," he does not contend he was rendered unable to hire counsel to defend the present action or that he was mentally incapacitated whatsoever.
Further, in direct contradiction to his contention, Mr. Bates avers in paragraph four of his affidavit that "[e]ven after my stroke, R.L. Bates continued to honor its commitments on all pending projects, including the three contracts in issue here." Thus, it would appear that Mr. Bates did, in fact, continue to manage his business affairs and conduct business after his stroke, thereby making his excusable neglect claim untenable. See Vaughn v. Precision Truss Panel, Inc. (May 25, 1989), Montgomery App. No. 11243, unreported (no excusable neglect where there is evidence of the owner's ability to maintain her regular office duties and there is a lack of expert testimony regarding the severity of a business owner's mental illness or whether such illness would have rendered the owner incompetent). Likewise, Mr. Bates goes on to explain in the next paragraph in his affidavit that during the summer of 1998, Mr. Cannell told others that the changes in Mr. Bates' speech and appearance were due to drug abuse, rather than a result of a stroke. Thus, it appears that Mr. Bates was continuing to conduct business in some manner insofar as he admits that customers were apparently able to perceive his speech patterns and appearance after his stroke.
Second, the period that elapsed between the time of Mr. Bates' stroke and the filing of the lawsuit, not to mention the final judgment, was substantial. Mr. Bates' stroke occurred in March 1998. However, the present action was not filed until July 1999, default judgment was not rendered until October 1999, and judgment on damages was not rendered until January 2000. The record is devoid of any evidence that Mr. Bates' stroke in March 1998 rendered him incapacitated one year and five months later when the complaints were filed, much less three months later when default judgment was entered.
Third, the two physicians' letters attached to appellees' motion for relief from judgment provides little support to appellees' excusable neglect claim. Dr. Barry Ludwig's letter states only that after the stroke, Mr. Bates "developed poor coordination on the left side, impaired visual-spatial skills, and poor eye-hand coordination." Further, Dr. Bernard Bierman states in his letter that Mr. Bates exhibited "depressive symptoms" and "mood symptoms." These letters are unpersuasive in that they do not document any mental incapacity that would have prevented Mr. Bates from appearing in or assisting in the preparation of the present action.
Fourth, appellants point out that at various times before judgment in the current proceedings, Mr. Bates appeared to have participated in certain legal matters with regard to his company. Appellants' counsel executed an affidavit indicating that he was contacted by appellees' counsel during the pendency of the lawsuit, thus making it apparent that, contrary to Mr. Bates' claims, he did have the capacity to consult with counsel in regard to the present action. Appellants also point out that Mr. Bates was apparently competent enough to proceed with bankruptcy filings in California during the pendency of the proceedings in the present case. Appellees counter that Mr. Bates' wife was also a party to the bankruptcy proceedings and thus could make legal decisions regarding that case, but that Mr. Bates had nobody to make business decisions for him in the present case. However, appellees' response is not convincing as it has been held that a party cannot claim excusable neglect for not delegating a competent agent to handle his or her business affairs.Andrew Bihl Sons, Inc. v. Trembly (1990), 67 Ohio App.3d 664. If Mr. Bates was, in fact, so incompetent that he could not make legal decisions in the present case, we find it irreconcilable that he was somehow competent to file an action and execute legal documents in California. Appellants also presented a copy of the legal representation contract between the Bateses and their bankruptcy attorney in California. In such agreement, Mr. Bates was apparently competent enough to enter into, sign, and date the legally binding fee contract on November 29, 1999.
Appellees cite a number of cases to support their position that Mr. Bates' condition constituted excusable neglect; however, we find such cases inapplicable to the present case. Although appellees attempt to buttress their argument by citing Bluffs of Wildwood Homeowners' Assn.,Inc. v. Dinkel (1994), 96 Ohio App.3d 278 for the conclusory assertion that personal and family illness constitutes excusable neglect, the decision contains absolutely no discussion of the underlying facts, rendering its persuasive value on this issue dubious. Appellees also cite our decision in Farrell v. Gray (Mar. 27, 1990), Franklin App. No. 89AP-1062, unreported, however, the present case is factually distinguishable. In Farrell, we found operative facts to establish excusable neglect when the appellant's physician provided evidence that his physical illness caused bizarre behavior, including auditory and visual hallucinations; that his thought processes were illogical; that his judgment, reasoning, concentration and abstract thinking were impaired; and that his cognitive functioning was still impaired when he was discharged only a few weeks before default judgment was entered. Appellees have failed to demonstrate that Mr. Bates' condition rose to such a degree in the present case. It is also important to note that we specifically cautioned in Farrell that "[t]his is not to say that every illness would constitute excusable neglect."
Appellees also cite our decision in McDade v. McDade (Sept. 21, 1995), Franklin App. No. 94APF08-1170, unreported, however, the present case is strongly distinguishable on several grounds. In McDade, only two days before the hearing, the appellant, who resided in South Carolina, was diagnosed with an atrial flutter with premature ventricular contractions. The appellant was immediately admitted to the hospital, and additional tests and a cardioversion were performed. The appellant was discharged the following day, but upon his discharge he continued to wear a heart monitor in the event of a reoccurrence of his arrhythmia. InMcDade, we specifically based our determination upon several factors. We found compelling that the appellant in McDade had suffered a "life-threatening situation" two days before the hearing and that for several weeks after discharge, he was in a daze and not functioning mentally. Importantly, in McDade, we found particularly persuasive that the appellant did not ignore a stage of the judicial process for several months he only failed to attend a hearing two days after the onset of a life-threatening condition. Thus, unlike the line of cases finding no excusable neglect due to illness, such as Fouts, Andrew Bihl Sons, andVaughn, we found McDade exceptional because it involved a short period of time during which the movant claimed he was not in the state of mind to participate in the judicial process.
The same factors that we relied upon to distinguish McDade are absent in the present case. In the current case, Mr. Bates was not suffering from a life-threatening condition at the time of the hearing. Mr. Bates suffered his stroke a full one year and five months before the complaint was filed and one year and eight months before default judgment was entered. Further, unlike McDade, in the current case, appellees ignored the action for nearly two years. Even after default judgment was rendered one year and eight months after Mr. Bates' stroke, appellees failed to appear even though they had full knowledge that a damages hearing loomed in a case where three separate defendants each prayed for ten million dollars in damages. In addition, in McDade, the appellant only waited two months before filing his motion for relief from default judgment. In the current case, appellees waited nearly eight months from the time of default judgment to file their motion for relief from judgment.
In sum, we simply find a complete dearth of evidence in the record to demonstrate that Mr. Bates could not defend or assist in defending the present action. To the contrary, all of the evidence demonstrates that he was capable of managing his business affairs and that he did, in fact, do such during this period. Therefore, we find the trial court abused its discretion in granting appellees' motion for relief from judgment. Appellants' first assignment of error is sustained.
Appellants argue in their second assignment of error that the trial court erred in granting appellees' motion to vacate the judgment pursuant to Civ.R. 60(B) without first holding an evidentiary hearing. Because we have sustained appellants' first assignment of error, their second assignment of error is moot, and we decline to address it. See App.R. 12(A)(1)(c).
For the reasons set forth above, we find that the trial court erred in granting appellees' motion for relief from judgment. Accordingly, we sustain appellants' first assignment of error and render their second assignment of error moot. The judgment of the Franklin County Court of Common Pleas granting appellees' motion for relief from judgment is reversed.
 _________________ BROWN, J.
TYACK and LAZARUS, JJ., concur.