**BRIDGE, Appellant,**

v.

**PARK NATIONAL BANK et al., Appellees.**

[Cite as *Bridge v. Park Natl. Bank,* 179 Ohio App.3d 761, 2008-Ohio-6607.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–549.

Decided Dec. 16, 2008.

762

James R. Douglass, L.P.A., and James R. Douglass, for appellant.

Havens Limited, James R. Havens, and Adam M. Schwartz; and Jones Day, J. Kevin Cogan, and J. Todd Kennard, for appellees.

TYACK, Judge.

{¶ 1} Plaintiff-appellant, William W. Bridge III, appeals from the June 2, 2008 decision and entry of the Franklin County Court of Common Pleas, granting defendants-appellees, Park National Bank's and Thomas J. Button's motion for summary judgment, and denying Bridge's cross-motion for summary judgment.

{¶ 2} On November 13, 2000, a fire partially destroyed the Best Western Hotel located at 888 East Dublin–Granville Road in Columbus, Ohio. Jui Jer Lin and Ming Li Lin owned the hotel, and Park National Bank ("PNB") held a mortgage on the property dating back to 1996. The mortgage outlined PNB's rights in the property, including its rights in the event the property was damaged. The mortgage required Lin to repair the property in a manner satisfactory to the bank. Insurance proceeds would be paid out after the bank was satisfied.

{¶ 3} Bridge, a licensed general contractor in the business of fire restoration, performed emergency work on the property and, on November 22, 2000, nine days after the fire, Lin entered into a contract with Bridge for repair and restoration of the premises. The contract between Lin and Bridge contained a provision on page three entitled "Notice to Insurance Company/Mortgage Bank" that provided as follows:

Our insurance company is Citizens Ins. Co. America. I/We hereby authorize and direct them to pay all proceeds due Contractor payable under our policy, directly to contractor and any mortgage company named. If Owner's name is included on the payment I/We agree that I/We will immediately and properly endorse all insurance payments into an independent escrow account, named by the Contractor for disbursement by a series of draws based upon a downpayment and a percentage of completion of Contractor's Work at the Bank/Mortgage Company inspection(s). Both parties agree that there will be at least 3 Bank/Mortgage Company inspections and possibly 5 at the sole request of Contractor and contractor will bear all expenses of all inspections and Owner agrees to be available for endorsing the required Bank/Mortgage Company inspection documents/payments and if Owner is unavailable Owner gives Contractor full authority to meet Bank/Mortgage inspectors and to sign required inspection documents/payments on behalf of Owner. All amounts due Contractor are due upon receipt of invoice for completion of work. Owner agrees to timely cooperate with Mortgage Bank and to comply with all Mortgage Bank requirements. Owner agrees to promptly endorse all checks, drafts or other payments due Contractor for repairs.

{¶ 4} PNB learned of the fire on December 20, 2000, and conducted an on-site inspection. Vice President Thomas Button was assigned to oversee the restoration process. Button and Bridges disagreed as to the procedure for release of funds and PNB's requirements. Button met with Lin in January 2001 to discuss PNB's requirements for restoration. Button followed up with a letter dated January 16, 2001, that set forth PNB's requirements including the procedure for release of insurance proceeds, the restoration budget, the restoration plans and specifications, qualifications of the contractor, Bridge's recent tax returns, and letters of reference. A series of meetings took place in January 2001, resulting in a stalemate, and work was discontinued on the project.

{¶ 5} After discussions about the predicament they found themselves in, Lin and Bridge entered into a settlement on February 2, 2001. The settlement agreement and mutual release of claims included the following paragraph:

By agreement below, neither party herein admits any wrongdoing, breach of contract, negligence or any other wrongful conduct whatsoever. The parties herein admit and acknowledge that interference by third parties outside of the contract between the parties, is the sole cause for dissolution of the contract between the parties.

{¶ 6} Bridge filed suit against PNB for tortious interference with contract on September 27, 2002. Bridge claimed that PNB tortiously interfered with his contract with Lin by the following: (1) non-payment or intentional delay in payments associated with the repair and restoration work, (2) refusal to timely communicate with interested parties, (3) refusal to abide by the terms of the repair contract, (4) demand for a new contract and/or terms, and (5) refusal to identify PNB's requirements for the release of insurance funds until 51 days after work had commenced.

{¶ 7} After many procedural issues were resolved, including two appeals to this court, the parties eventually filed competing motions for summary judgment. The trial court granted PNB's summary judgment motion and denied Bridge's motion. The trial court looked at the settlement agreement and reasoned that Bridge and Lin caused the "dissolution" of the repair contract by means of the settlement agreement.

{¶ 8} In interpreting what the parties meant by the term "dissolution," the trial court looked to Black's Law Dictionary and determined that the terms "dissolution" and "rescission" were synonymous. The court then decided that although the settlement agreement never used the word "rescission," the dissolution amounted to a rescission of the repair contract. Therefore, when Lin and Bridge dissolved the repair contract, it amounted to a rescission. Since a rescinded contract puts the parties back in their original positions, the rescission rendered the original contract void ab initio. As a result, the trial court concluded that there was no valid enforceable contract, and therefore, Bridge could not prevail on his tortuous-interference-with-contract claim. The trial court never reached the other grounds for summary judgment asserted by PNB because it found that Bridge had failed to meet the first requirement for tortious interference: the existence of a valid enforceable contract.

{¶ 9} On appeal, Bridge raises the following assignment of error:

The trial court erred in granting summary judgment against Bridge because the settlement agreement between Bridge and the Lins did not result in a "rescission" of the repair contract.

{¶ 10} Summary judgment may be granted under Civ.R. 56 only if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor.

{¶ 11} Appellate review of summary judgments is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. Consequently, we stand in the shoes of the trial court and conduct an independent review of the record. Thus, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 12} Ohio recognizes the tort of tortious interference with a contract. The Supreme Court of Ohio adopted Restatement of the Law 2d, Torts (1979) Section 766, in *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863. Section 766 of the Restatement provides as follows:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

{¶ 13} Tortious interference with contract requires proof of the following elements: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 172, 707 N.E.2d 853.

{¶ 14} PNB bases its argument on the determination by the trial court that the term "dissolution" is synonymous with the term "rescission," and in Ohio a rescinded contract is void. We are slow to interpret the parties' choice of the term "dissolution" in a way that ignores the obvious intent of the parties to the agreement.

{¶ 15} The first definition in Black's Law Dictionary (7th Ed.1999) 486, for the term "dissolution" is "[t]he act of bringing to an end; termination." The second

definition is as follows: "[t]he cancellation or abrogation of a contract, with the effect of annulling the contract's binding force and restoring the parties to their original positions. See RESCISSION." The trial court and PNB base their reasoning on the latter definition.

{¶ 16} In *Mid–Am. Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590, 599, 579 N.E.2d 721, this court distinguished between "termination" of a contract and "rescission" in the context of misrepresentations by a health spa and the Ohio Consumer Sales Practices Act.

> If rescission is elected, it necessarily follows that the defrauded party is entitled to recover whatever he has already paid on the contract. This recovery is necessary because rescission is not merely a termination of the contract; it is an annulment of the contract. The primary purpose of "rescission" is to restore the parties to their original positions as if the contract had never been formed. Returning the parties to status quo is an integral part of rescission, and in doing so it is generally necessary to award the party seeking rescission at least his out-of-pocket expenses. These out-of-pocket expenses are properly characterized as "damages" for they represent the loss not cured by the cancellation of the contract that defendant has suffered as a result of the fraudulent inducement.

{¶ 17} Thus, according to this court, a rescission is something more than a mere termination.

{¶ 18} In *Unencumbered Assets Trust v. Great Am. Ins. Co.* (S.D.Ohio 2007), No. 2:04 CV 908, 2007 WL 2029063, the court recognized a distinction between cancellation and rescission ab initio of an insurance contract that was based upon material misrepresentation. Indeed, a case cited by PNB, *May v. State Farm Ins. Co.* (May 14, 1991), Franklin App. No. 90AP–1407, 1991 WL 81925, dealt with an insurance contract procured by misrepresentations of the insured. In that case, this court held that a contract that is rescinded is ineffective ab initio and no rights may be predicated on that contract.

{¶ 19} A search of online legal data bases reveals that one of the most common uses of the term dissolution occurs when a marriage is terminated. A dissolution does not put the parties into the positions they were in before the marriage. Rather, it looks forward to a termination of the marriage. It is not as though the parties never married, or that the marriage was annulled. Similarly, in the partnership context, a dissolution does not relieve third parties from their contractual obligations to the partnership even if the partners voluntarily severed their relationship. 68 Corpus Juris Secundum (2008 update) Interchangeability of cancellation and rescission, Section 321.

{¶ 20} On the other hand, rescission looks backward and forward in extinguishing all rights and obligations and it attempts to restore the parties to

their precontract positions. "Rescission is the abrogation, nullification, termination, or voiding of a contract or agreement. Rescission operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or some other reason to avoid unjust enrichment. * * * Rescission is the cancellation of obligations flowing from a contract that is absolutely or relatively null from its inception." 12A Corpus Juris Secundum, (2008 update), Cancellation of Instruments; Rescission, Section 1.

{¶ 21} Here, there is no dispute that the repair contract was in force and valid at the time PNB engaged in the alleged interference. The question then becomes whether the eventual dissolution of the repair contract has any bearing on the first element of the tort. This court is not inclined to interpret a term used by nonlawyer parties to a contract in a way that defeats the intent of the agreement. The term "rescission" appears nowhere in the settlement agreement, and PNB builds its argument on a shaky foundation: the definition of a word that is never once used in the document. Use of the term "dissolution" may have been poor drafting by Bridge, but the four corners of the document indicate that Lin and Bridge intended to absolve each other of liability, discharge their remaining obligations under the contract, have Lin pay Bridge for the work he had done, and to allow Bridge to pursue PNB for tortious interference.

{¶ 22} With respect to the first element, the existence of a valid enforceable contract, we find that comment *f* to Section 766 of the Restatement sheds additional light on the issue. Comment *f,* under the heading "Voidable Contracts," states: "The particular agreement must be in force and effect *at the time of the breach that the actor has caused;* and if for any reason it is entirely void, there is no liability for causing its breach." (Emphasis added.)

{¶ 23} When the evidence is construed favorably toward Bridge, we cannot infer from the use of the single word "dissolution" that the entire repair contract is entirely void. To do so requires a leap of logic that we are not prepared to take.

{¶ 24} PNB asserts that it is entitled to summary judgment for another reason, namely that the bank was asserting its own legally protected interest by requiring Bridge to fulfill certain requirements.

{¶ 25} This court has held that the fourth element, lack of justification, can be defeated by a privilege to interfere with a contract to assert a legally protected interest. This concept is found in the Restatement of the Law, Torts, that recognizes that one is privileged to purposely cause another not to perform a contract with a third person where the defendant, in good faith, is asserting a legally protected interest of his own which he believes will be impaired or destroyed by the performance of the contract. *Donald G. Culp Co. v. Reliable*

*Stores Corp.* (1983), 14 Ohio App.3d 161, 14 OBR 178, 470 N.E.2d 193; IV Restatement of the Law 2d, Torts (1979) Section 773. Ohio courts have approved the privilege of officers, directors, and creditors to interfere with contracts in the furtherance of their legitimate business interests. *Courie v. ALCOA,* 162 Ohio App.3d 133, 2005-Ohio-3483, 832 N.E.2d 1230, at ¶ 35, citing *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.* (C.A.6, 1988), 862 F.2d 597, 601; *Daup v. Tower Cellular, Inc.* (2000), 136 Ohio App.3d 555, 568, 737 N.E.2d 128.

{¶ 26} Whether the interference is justified is a fact-specific determination based on the particular circumstances. *Fred Siegel Co.,* 85 Ohio St.3d at 176, 707 N.E.2d 853. In making this determination, the court is to consider the following factors taken from the Restatement of the Law, Torts: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. *Fred Siegel Co.,* at 178–179, 707 N.E.2d 853, citing Restatement of the Law 2d, Torts (1979), Section 767.

{¶ 27} In *Donald G. Culp Co.,* the court determined that an owner's refusal to consent to a sublease unless a restoration bond was provided was not tortious interference with a contract, because the request was reasonably designed to protect the owner's interest. The broker had argued that the bond requirement was merely a delay and was not designed to protect a legitimate business interest because the landlord did not require the bond from another tenant. The court rejected the argument after it determined that the premises were to be used for a different commercial purpose and that alteration to the premises would be required by the first tenant.

{¶ 28} Bearing this principle in mind, we agree with the decision of the trial court that genuine issues of material fact preclude summary judgment on this basis. Here, there is evidence that after Bridge ceased work on the project, PNB allowed Lin to repair the hotel on his own, without the mortgage bank's requirements that were placed on Bridge. The affidavit of James Winkle states that as of February 2001, he worked directly for Lin and was aware that PNB did not impose any of the conditions on Lin that they imposed on Bridge with respect to the repair of the hotel. Thus, a genuine issue of material fact exists about the justification behind PNB's conduct, the interests sought to be protected, and the reasonableness of the requirements. Therefore, summary judgment on the issue of lack of justification or privilege is not warranted.

{¶ 29} PNB also argues that the trial court's decision should be affirmed because PNB's actions did not cause Lin to cancel the repair contract. Genuine

issues of material fact exist as to the effect of PNB's action on the performance of the contract. Lin and Bridge asserted as follows in the settlement agreement: "The parties herein admit and acknowledge that interference by third parties outside of the contract between the parties, is the sole cause for dissolution of the contract between the parties." PNB, on the other hand, claims that Lin canceled the contract because of lack of progress, and Bridge's failure to complete PNB's requirements. Whether the language of the settlement agreement contradicts Lin's deposition testimony and, if so, how that contradiction should be resolved must be left to the finder of fact.

{¶ 30} Finally, PNB contends that there is no evidence of a tortious-interference claim against Vice President Button because his acts were done to protect PNB's rights and interests and because at all times he acted in the scope of his employment. This evidence was not disputed by Bridge, and therefore we find the argument well taken.

{¶ 31} Based on the foregoing, the assignment of error is overruled with respect to Button, and sustained with respect to PNB. The judgment of the Franklin County Court of Common Pleas is affirmed with respect to Button, and reversed and remanded with respect to PNB for further proceedings in accordance with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded
for further proceedings.

BRYANT and KLATT, JJ., concur.