BIERLEIN, APPELLANT AND
CROSS-APPELLEE, v.
ALEX'S CONTINENTAL INN, INC.,
APPELLEE AND CROSS APPELLANT.

(No. 8504—Decided
February 27, 1984.)

*Messrs. Young, Pryor, Lynn &
Jerardi* and *Mr. Gary W. Gottschlich,*
for appellant and cross-appellee.

*Mr. Douglas Casteel,* for appellee
and cross-appellant.

BROGAN, P. J. On or about January 14, 1981, the plaintiff, Delores Bierlein, contacted defendant, Alex's Continental Inn (Alex's) to inquire about reservations for a wedding reception to be held on July 18, 1981.

As a result of this inquiry, Mrs. Bierlein received by mail a copy of a "Banquet Dinner Menu." Said menu contained language that a deposit of two dollars per person was required to confirm a reservation. Plaintiff acknowledged at trial that she was aware upon receipt of the menu that a deposit was required.

On January 21, 1981, Mrs. Bierlein and her daughter went to Alex's and met with Carmela Pragalos. At that time they made arrangements to rent the "Silver Room" on July 18, 1981. Mrs. Bierlein then wrote a check for $200 as a deposit for the room. It is disputed whether she received and read a copy of the Buffet Menu prior to writing the check. The menu stated "we regret we cannot refund deposits." Mrs. Bierlein did admit to reading this language when she got home later that day.

On April 20, 1981, the plaintiff contacted Alex's and advised Pragalos that her daughter's fiance had been transferred to New York and said wedding reception would have to be cancelled. Plaintiff wrote a letter to Alex's dated April 22, 1981, and confirmed said cancellation. Attempts to provide an alternative date failed due to prior reservations of the room by third parties. Plaintiff's subsequent request to have the $200 refunded was refused.

On October 13, 1981, Delores Bierlein filed a small claims complaint in the Miamisburg Municipal Court against Alex's Continental Inn, Inc. The complaint sought a refund of the $200 paid as a deposit for plaintiff daughter's wedding reception. In response thereto the defendant, Alex's, through counsel filed a counterclaim for $1,000 in damages from plaintiff. In addition the defendant, per its request, had the matter removed to the regular division to be placed on the docket.

Following defendant's response Mrs. Bierlein sought to dismiss this case; however, she was prevented from doing so in light of the pending counterclaim. She was therefore compelled to seek legal counsel to handle the matter. Subsequently, the plaintiff through counsel amended her complaint to allege violations of Ohio's Consumer Sales Practices Act, codified in R.C. Chapter 1345. Therein she prayed for damages in an amount equal to twice the amount of the deposit plus attorney fees and costs.

This matter was set for trial on November 2, 1982. Prior to the commencement of the proceedings on that date, the defendant filed a notice of dismissal with the court to dismiss its counterclaim without prejudice. At the outset of the trial the court noted the dismissal and the matter proceeded solely to address the merits of plaintiff's

claim. Per entry filed on June 14, 1983, the trial court found in favor of the plaintiff on the grounds defendant had violated the Consumer Sales Practices Act. Judgment was entered in favor of the plaintiff for $800 plus interest at ten percent per annum. This figure represented the return of the $200 deposit as well as a favorable judgment for $600 in attorney fees.

From this judgment both parties have appealed to this court setting forth various assignments of error. The defendant, Alex's, has alleged five errors in the trial court, the first of which maintains that:

"The trial court erred by applying the Ohio Consumer Sales Practices Act (O.R.C. [Chapter] 1345) and the rules promulgated thereunder to the evidence submitted at trial."

Under this assignment of error defendant argues that the restaurant business, such as it is engaged in, does not fall within the purview of the Consumer Sales Practices Act. We disagree.

R.C. 1345.03 provides in part:

"(A) No *supplier* shall commit an unfair or deceptive act or practice in connection with a *consumer transaction.* Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." (Emphasis added.)

R.C. 1345.03(A) provides identical language as applied to unconscionable acts. R.C. 1345.01(A) defines "consumer transaction" as:

" 'Consumer transaction' means a *sale,* lease, assignment, award by chance, or other transfer of an item of goods, a service, franchise, or an intangible, except those transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers, those between attorneys, physicians or dentists and their clients or patients, * * * to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." (Emphasis added.)

We recognize that the renting of a banquet hall for the purposes of providing food and service at a festivity such as a wedding reception necessarily entails providing both a sale and a service. The food provided for the guests as indicated on the menu provided by the defendant requires the sale of such food. The set up, service during, and a clean up after the reception, as well as providing the room itself, constitutes the providing of a service. Hence, we have a consumer transaction as defined in the Act.

Subsections (C) and (D) of R.C. 1345.01 also define "supplier" and "consumer" in the following terms:

"(C) 'Supplier' means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer.

"(D) 'Consumer' means a person who engages in a consumer transaction with a supplier."

It is apparent that the defendant fits the description of "supplier" under subsection (C) while the plaintiff is obviously a "consumer" as defined in subsection (D). As this transaction does not fall within those transactions expressly excluded in R.C. 1345.01(A), *supra,* we must follow the apparent plain meaning of the statute which indicates the restaurant business is indeed within the purview of the Act.

Defendant's first assignment of error is overruled.

Defendant maintains in its second assignment of error that:

"*En* [sic] *arguendo,* if the consumer sales practices act applies to the evidence in the case, then the court erred in applying the law to the said evidence."

The trial court absolved the defendant of any unconscionable practices

under R.C. 1345.03. The court did however find that the defendant violated R.C. 1345.02 (unfair or deceptive sales practice) by failing to adhere to certain rules promulgated by the Attorney General in the Ohio Administrative Code pursuant to authorization under R.C. 1345.05(B). In its opinion the trial court concluded that the defendant violated Ohio Adm. Code 109:4-3-07 which provides:

"It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to accept a deposit unless the following conditions are met:

"(A) The deposit obligates the supplier to refrain for a specified period of time from offering for sale to any other person the goods in relation to which the deposit has been made by the consumer if such goods are unique; provided that a supplier may continue to sell or offer to sell goods on which a deposit has been made if he has available sufficient goods to satisy [sic] all consumers who have made deposits;

"(B) All deposits accepted by a supplier must be evidenced by dated receipts stating the following information:

"(1) Description of the goods, (including model, model year, when appropriate, make, and color);

"(2) The cash selling price;

"(3) Allowance on the goods to be traded in, if any;

"(4) Time during which the option is binding;

"(5) Whether the deposit is refundable and under what conditions; and

"(6) Any additional costs such as delivery charges.

"(C) For the purposes of this rule 'deposit' means any amount of money tendered or obligation to pay money incurred by a consumer as a deposit, refundable or non-refundable option, or as partial payment for goods or services."

Based upon the undisputed fact that the defendant did indeed take a $200 deposit from the plaintiff on or about January 21, 1981 without tendering a receipt indicating acceptance of the deposit, nor indicating the establishment's refund policy, the trial court imposed liability under subsection (B)(5) of the rule.

Defendant argues it was error to apply this rule to the evidence in this matter. It is defendant's position that Ohio Adm. Code 109:4-3-07 only applies to suppliers who deal in "goods" as defined in Ohio Adm. Code 109:4-3-01(C)(1). Defendant further argues this definition does not encompass a restauranteer such as it is.

We would agree with defendant that its business does not fall within the definition of "goods" as the rules provide. We disagree, however, with defendant's claim that Ohio Adm. Code 109:4-3-07 is limited in its application solely to suppliers dealing in this type of goods. The language of the rule indicates that it is "a deceptive act or practice in connection with a consumer transaction for a supplier * * *." The terminology does not limit or exclude any specific consumer transactions or supplier. We interpret subsection (A) of Ohio Adm. Code 109:4-3-07 merely as a requirement imposed upon those suppliers who do deal in the type of goods so defined. To all other consumer transactions subsection (B) alone is controlling. We find support in this conclusion from subsection (C) of Ohio Adm. Code 109:4-3-07 which states:

"For the purposes of this rule 'deposit' means any amount of money tendered or obligation to pay money incurred by a consumer as a deposit, refundable or non-refundable option, or as partial payment for goods or services." (Emphasis added.)

We do not believe the "services" language was intended as mere surplusage by the Attorney General when promulgating this rule. It in-

..

dicates to this court that this provision was not intended to be limited in its application to suppliers of "goods" as defined by Ohio Adm. Code 109:4-3-01; rather, it is also applicable to consumer transactions such as this, where a service is contracted to be provided by the supplier restauranteer, to the consumer, plaintiff herein.

Ohio Adm. Code 109:4-3-01 also provides in part the following:

"(A) Purposes, rules of construction

"(1) These substantive rules (rule 109:4-3-01 of the Administrative Code, etc.) are adopted by the office of the attorney general pursuant to section 1345.05(B) of the Revised Code and Chapter 119. of the Revised Code. Without limiting the scope of any section of the Revised Code or any other rule, *these rules shall be liberally construed and applied to promote their purposes and policies.* (Emphasis ours).

"(2) The purposes and policies of these rules are to:

"(a) Define with reasonable specificity acts and practices which violate sections 1345.02 or 1345.03 of the Revised Code;

"(b) Protect consumers from suppliers who engage in referral selling, commit deceptive acts or practices, or commit unconscionable acts or practices;

"(c) Encourage the development of fair consumer sales practices."

We believe our conclusion best comports a liberal construction of Ohio Adm. Code 109:4-3-07 such as to fully promote the purposes and policies of the Consumer Sales Practices Act. Defendant's second assignment of error is hereby dismissed.

Defendant argues in its third assignment of error that:

"The trial court erred in awarding damages under O.R.C. 1345.09."

Having rescinded the contract for the rental of the room and services to be provided, the trial court ordered defendant to return to plaintiff the $200 deposit. Defendant apparently believes the $200 judgment was in the nature of a damages award, and as such is inconsistent with R.C. 1345.09 which provides for an election between *rescinding* the transaction *or* recovering damages. As we perceive the judgment for $200, it was awarded in order to place the parties back to their status quo prior to the transaction. As such the court was merely restoring the benefit received by the defendant. This is nothing more than rescission pure and simple. The $200 judgment was not in the nature of a damages award and consequently no violation of R.C. 1345.09 has occurred. See 18 Ohio Jurispurdence 3d (1980), Contracts, Section 296 *et seq.*

Defendant's third assignment of error is without merit.

In its fourth assignment of error defendant alleges that:

"The trial court erred in awarding attorney fees pursuant to O.R.C. 1345.09(F)(2)."

R.C. 1345.09(F)(2) allows attorney fees in the following circumstances:

"(F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:

"(1) * * *

"(2) The supplier has *knowingly* committed an act or practice that violates this chapter." (Emphasis added.)

Defendant maintains that if it did in fact violate the Consumer Sales Practices Act, it did not do so "knowingly," and as such the award of attorney fees under this provision was erroneous. Defendant argues the word "knowingly" limits recovery of attorney fees to those situations where a defendant has actual awareness of the provisions, yet acted contrary to them. Unfortunately plaintiff provided no response to this allegation.

Our research has uncovered no Ohio

Supreme Court or appellate decisions interpreting the "knowingly" requirement of this Act. This language could be construed as simply requiring the supplier to commit a knowing act in order for attorney fees to be granted. See Roberts & Martz, Consumerism Comes of Age: Treble Damages and Attorneys Fees in Consumer Transactions — The Ohio Consumer Sales Practices Act (1981), 42 Ohio St. L.J. 927, 957. The language could also be construed as the defendant claims, *i.e.*, that the word "knowingly" in R.C. 1345.09(F)(2) relates to knowledge that the Act violates the law. This latter construction was adopted by the Montgomery County Common Pleas Court in *Hamilton* v. *Davis Buick Co.* (June 24, 1980), No. 79-1875, unreported. We are inclined to agree with defendant's position on this matter.

Under R.C. 1345.01(E) the legislature has defined "knowledge" as:

" 'Knowledge' means *actual awareness,* but such actual awareness may be inferred where objective manifestations indicate that the individual acted with such awareness." (Emphasis added.)

This definition indicates to this court that the legislature did in fact intend that the prevailing consumer show the supplier was actually aware he was violating the Act by his actions, or at least establish some fact upon which such awareness could be inferred. It is obvious from reading the trial court's order that in its judgment the defendant was not aware its failure to tender a receipt as required under the Act constituted a violation of the law. Upon our review of the record we believe such a conclusion is proper under the circumstances of this case. We are cognizant of the fact that a finding such as this is contrary to the long established maxim that ignorance of the law is no excuse. However, we are also mindful of the fact that the award of attorney fees is an extraordinary remedy which is controlled primarily by statute. If the legislature wishes to impose restrictions on the application of its provisions we are constrained to interpret and apply the law consistent with its wishes.

Defendant's fourth assignment of error is sustained.

Defendant's remaining assignment of error asserts that:

"The trial court erred when it awarded attorney fees pursuant to O.R.C. 1925.02(B)."

R.C. 1925.02(B) provides for the granting of attorney fees by the trial court when a case had originated in the small claims court but was later docketed on the regular docket of the court as a result of the defendant filing a counterclaim in the action. This subsection presently provides in pertinent part that:

"If a counterclaim or cross-claim exceeds one thousand dollars and the case is transferred to the regular docket of the court, the court may, if it finds that the counterclaim or cross-claim was without substantial grounds, award reasonable attorneys' fees by special order to the party against whom the counterclaim or cross-claim is instituted, if he prevails in the action on that claim."

Defendant argues this provision was inappropriately applied in this matter as the counterclaim did not *exceed* $1,000 nor did plaintiff prevail on this claim. As the counterclaim for $1,000 does not "exceed" the prerequisited amount of the statute it would appear as though defendant's claim has merit. However, our research leads us to conclude that R.C. 1925.02(B) was not in effect when the counterclaim was filed by the defendant. This statute became effective on August 20, 1982, long after the counterclaim was filed and case transferred to the regular docket of the municipal court. At the time the counterclaim was filed, R.C. 1925.02 provided for attorney fees under the

same circumstances as under subsection (B) of the amended statute, but permitted such where the defendant's claim exceeded $500.

If we were to accept the defendant's position we would be giving retrospective effect to the new R.C. 1925.02(B). This would be contrary to the general rule that a statute is prospective in its operation "unless its terms show clearly an intention that it should operate retrospectively." *Bernier* v. *Becker* (1881), 37 Ohio St. 72, 74 (quoted in *Smith* v. *Ohio Valley Ins. Co.* [1971], 27 Ohio St. 2d 268, 276 [56 O.O.2d 160]). As the language of the statute reveals no intention on the part of the legislature to apply R.C. 1925.02(B) retrospectively we must give the statute a prospective application. Consequently, the trial court could properly award attorney fees under R.C. 1925.02 as it read prior to the amendment.

Defendant further maintains it was error for the court to rely on this provision in awarding the fees as there is no evidence that the opposing party prevailed on the counterclaim. Defendant asserts his voluntary dismissal of the complaint prior to trial prevented it from being tried on its merits. As such defendant asserts that the plaintiff did not prevail on the claim.

Pursuant to Civ. R. 41, defendant's dismissal of its counterclaim prior to trial was one without prejudice. We do not, however, believe this fact is dispositive of the dispute. In light of the fact that the plaintiff ultimately prevailed on her complaint it would appear to this court that she likewise would have prevailed on defendant's counterclaim had it not been voluntarily dismissed. It is inconceivable that the court could grant judgment for plaintiff on her complaint and for defendant on its counterclaim. By successfully litigating her claim plaintiff necessarily rebutted the merits of a compulsory counterclaim or else no award in her favor could have

been granted. To conclude otherwise would be contrary to the purposes of the legislation and grant judicial approval to a tactic often employed by defendants to coerce impecunious claimants into choosing between dismissing their claims or, in the alternative, risking the imposition of excessive court costs and attorney fees in order to vindicate their rights. By filing counterclaims such as the one herein, and dismissing them on the date of the trial so as to circumvent the statutory provision allowing attorney fees, defendants could regularly take advantage of the unsuspecting small claims petitioner. We are unwilling to condone such potentially manipulated behavior, nor do we perceive that the legislature intended to do so when it enacted R.C. 1925.02.

In order to appropriately award attorney fees under R.C. 1925.02 it is also necessary that the claim filed by the defendant be found to be made without substantial grounds. The trial court in its opinion stated the following:

"The Court further finds grounds to award attorney fees by way of section 1925.02(B) finding that the counterclaim filed by the defendant was without substantial grounds by way of its dismissing its counterclaim prior to the trial in this matter. Small Claims Court is set up for parties to have their cases heard without following the regular rules of evidence and having the necessity of attorneys. By the defendant filing a counterclaim, the plaintiff in this case was forced to retain counsel and having this matter heard in total on the Court's regular docket. Dismissal of the counterclaim with no further explanation is deemed to be frivolous by the Court and attorney fees will be awarded accordingly."

We find nothing in the record to dispute this finding. Accordingly we perceive no error on the part of the trial court in awarding attorney fees in this matter.

Defendant's fifth assignment of error is overruled.

Plaintiff, Delores Bierlein, in her appeal argues the court erred to her prejudice in four respects. Plaintiff initially maintains in her first assignment of error that the court should have awarded her treble damages as opposed to mere rescission. She argues that:

"Where the trial court finds a violation of OAC Section 109:4-3-07, and treble damages is the greater of the remedies provided by O.R.C. Section 1345.09(B) then section 1345.09(B) requires an award of treble damages and the trial court errs in failing to grant this remedy."

The Consumer Sales Practices Act provides for the following private remedies in R.C. 1345.09:

"(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended."

Ohio Adm. Code 109:4-3-07 was promulgated pursuant to R.C. 1345.05(B)(2). Consequently defendant's violation of that provision brings its actions within the remedies provided in subsection (B) of R.C. 1345.09. This section gives a consumer the alternative of either rescinding the transaction or recovering damages up to three times the amount of those actually incurred. In its amended complaint the plaintiff clearly requested damages as opposed to rescission. The statute fails to grant the trial court the discretion to elect as between the two. The language mandates the "consumer" may elect, not the court. The trial court therefore erred by limiting recovery to rescission. We empathize with the trial court's desire to limit the recovery in light of the fact the defendant was found responsible merely as a result of an innocent act which unknowingly resulted in a violation of the Consumer Sales Practices Act. We may not however disregard the apparent intent of the legislature in enacting the private remedies provision. It may well be that a change in the statute is desirable so as to allow the trial court to exercise its sound discretion in fashioning a remedy appropriate to the facts; this change, however, must be made by the legislature.

Accordingly, pursuant to App. R. 12(B) this court must enter the judgment that the trial court should have rendered. In her complaint plaintiff prayed for $400 in damages (twice the actual amount). Although the statute allows for treble damages, Civ. R. 54(C) dictates that "a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand * * *." Plaintiff's recovery is therefore limited to the $400 as demanded. The trial court's judgment granting rescission is hereby reversed and judgment shall be entered in the amount of $400 in plaintiff's favor.

Plaintiff's first assignment of error is well-taken.

Plaintiff's next assignment of error challenges the amount of attorney fees awarded in her favor. In his post-trial brief on behalf of Mrs. Bierlein, her attorney submitted a document itemizing the services he performed in support of her claim for attorney fees. Her attorney concluded the following amount

was reasonable for the time expended as indicated in the statement:

"28.20 hours at $85.00 per hour
= $2,397.00
"6 hours (paralegal) at $30.00
= 180.00

$2,577.00

" + Long Distance telephone charges 4.23

$2,581.23"

Defendant filed a similar statement in its post-trial brief asserting its attorney had performed $2,394 of services. The trial court concluded $600 was reasonable and entered that amount in plaintiff's favor. Plaintiff argues on appeal that:

"Where a litigant removes a small claims case to the regular docket, pursuant to [R.C.] Section 1925.10, interposes a counterclaim without substantial grounds, withdraws the counterclaim on the day of trial, and loses on the merits after requiring opposing counsel to endure formal discovery, respond to motions, and attend hearings, and otherwise causes litigation to exceed reasonable bounds relative to the amount in controversy, and where the trial court determines that the prevailing party is entitled to reasonable attorney fees under [R.C.] Sections 1925.02(B) and 1345.09(F)(2), the trial court abuses its discretion in awarding attorney fees at the rate of $14.00 per hour."

The nature of this case indicates to this court that it should never have proceeded beyond the small claims court. The only reason it did was because defendant filed a. counterclaim which was inexplicably dismissed on the day of trial. This action obviously resulted in added court costs and attorney fees to the parties. We have established above that this conduct warranted the trial court's award of the attorney fees in plaintiff's favor. As such the trial court

was permitted under R.C. 1925.02 to grant "reasonable" fees. Such an award is to be based upon the sound discretion of the court; absent a showing of abuse of such discretion we cannot interfere. with that ruling.

In order for a party to prevail on its claim for attorney fees it must demonstrate the reasonable value of such services. See *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85 [2 O.O.3d 65]. The only such evidence we have is the document presented in the post-trial brief. This document lists the services provided and the dates on which they were performed. It also states the hourly fee charged and the number of hours expended. Although these are important factors for the court to consider they are not in and of themselves dispositive of the issue. We find ourselves in agreement with Presiding Judge Krenzler in his concurring opinion in *Drake* v. *Menczer* (1980), 67 Ohio App. 2d 122 [21 O.O.3d 429], wherein he stated at 126 the following:

"The time spent by an attorney and a reasonable rate to be charged for that time are important factors to be considered by the court. But fees may not always be awarded *only* on the basis of time and an hourly charge. The trial court may disagree with the attorney as to the amount of time reasonably required to perform the particular service. The court will give the evidence such weight as is warranted under all the facts and circumstances in a given case. The court's determination should be based upon the actual value of the necessary service." See *Hlavin* v. *W. E. Plechaty Co.* (1971), 28 Ohio App. 2d 43 [57 O.O.2d 69].

In this regard we presume the trial court gave such weight as it felt was warranted under the facts of this case. In light of the fact the entire dispute was over a $200 claim it was not unreasonable in the absence of evidence to the contrary to conclude $600 was the actual

value of the necessary services. We find no indication in the record to reveal an abuse of discretion by the trial court.

Plaintiff's second assignment of error is hereby dismissed.

Plaintiff asserts under her third assignment of error that we should grant her attorney fees for services rendered on her behalf for the appeal. She claims that:

"Where successful litigant awarded attorney fees pursuant to statute, she is, on appeal, also entitled to fees where the appeal was necessary to enforce or vindicate rights established by the trial court in its judgment."

Plaintiff's argument essentially focuses upon the fact the trial court awarded attorney fees under the Consumer Sales Practices Act. R.C. 1345.09. She maintains the purposes of the Act can only be fully achieved where legal fees are awarded at all court levels. In support thereof plaintiff cites several sister state judgments which have granted such fees on appeal under similar consumer legislation. See *Gonzales* v. *Van's Chevrolet, Inc.* (Del. 1980), 498 F. Supp. 1102; *Linthirum* v. *Archambault* (1979), 379 Mass. 381, 398 N.E. 2d 482; *Volkswagen of America, Inc.* v. *Licht* (Tex. Civ. App. 1976), 544 S.W. 2d 442. Having decided above that the court erred in granting attorney fees under R.C. 1345.09(F)(2), attorney fees for defense of the appeal are also inappropriate.

Plaintiff's third assignment of error is overruled. Plaintiff's remaining assignment of error challenges that part of the trial court's award allowing eight percent interest on the judgment.

Mrs. Bierlein argues that:

"In accordance with O.R.C. Section 1343.03, interest on a judgment must be awarded in the amount of 10%."

We agree. R.C. 1343.03(A) provides that "* * * upon all judgments * * * of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten percent per annum * * *." It is the opinion of this court that the transaction involved herein is encompassed within this provision.

Plaintiff's fourth assignment of error is well-taken.

In accordance with the opinion of the court the judgment of the trial court is modified in the following respects: (1) Judgment shall be entered in plaintiff's favor for $400 in damages; and (2) interest on the judgment shall be entered at ten percent per annum. Attorney fees shall remain as awarded by the trial court.

Judgment affirmed in part and modified in part.

*Judgment affirmed in part and modified in part.*

WILSON and WEBER, JJ., concur.