DOE, Appellant,

v.

**OHIO STATE UNIVERSITY HOSPITALS AND CLINICS, Appellees.**

[Cite as *Doe v. Ohio State Univ. Hosp. & Clinics* (1995), 105 Ohio App.3d 406.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94API11–1625.

Decided Sept. 19, 1995.

*Luper, Wolinetz, Sheriff & Neidenthal* and *Eugene R. Butler*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Marilena R. Walters* and *Catherine Cola*, Assistant Attorney General, for appellees.

PETREE, Judge.

This matter is before this court upon the appeal of plaintiff, "John Doe," from the October 19, 1994 judgment entry of the Court of Claims of Ohio, which entered judgment in favor of defendant, the Ohio State University ("OSU") Hospitals and Clinics.[1]

The facts of this case are as follows: In 1988, plaintiff discovered that he was HIV positive; however, he chose to keep his HIV status confidential and told only those he felt had a "right to know." On March 3, 1991, he experienced severe abdominal pain and vomiting. He sought treatment at OSU's emergency room, where he was informed that he had a kidney stone. When asked if he had a physician who had previously treated him for kidney stones, plaintiff responded that, in the past, he had been treated for this condition by Dr. Henry Wise. Plaintiff was advised that Dr. Wise would be in the OSU Outpatient Clinic the next day, and was instructed to call Dr. Wise to make an appointment. On March 4, 1991, plaintiff was seen by Dr. Wise, who ordered that plaintiff undergo lithotripsy surgery. Dr. Wise also ordered two laboratory tests which are standing orders for a lithotripsy: a complete blood count ("CBC"), and a potassium test. Jane Benner, Dr. Wise's nurse, was working in the clinic that day and completed the requisition form requesting these tests.

---

1. The complaint specifically named "State of Ohio, The Ohio State University Hospitals and Clinics" as defendant. The trial court, by entry dated March 6, 1992, deleted the reference to "State of Ohio" as surplusage and stated that the caption on all pleadings would thereafter read "The Ohio State University." Some of the testimony in this case indicated that the Ohio State *University* and the Ohio State University *Hospitals and Clinics* are different entities. Thus, we wish to clarify that we are referring to the OSU Hospitals and Clinics for purposes of this opinion.

Plaintiff advised Benner that he was HIV positive, as he wanted to ensure that people who worked in the laboratory took proper precautions when handling his blood. In an effort to alert laboratory personnel that plaintiff was HIV positive, Benner wrote "*HIV+" on the requisition; unfortunately, this notation happened to be placed in a section marked "Other Tests." It is undisputed that Benner did not obtain plaintiff's consent to perform an HIV test. The parties dispute the significance of Benner's notation; plaintiff argues that Dr. Wise never ordered such a test and that Benner never intended this by her notation. Defendant argues that a laboratory receiving this requisition would believe that the physician wanted tests run to determine whether or not a patient was HIV positive.

In any event, plaintiff was tested for the HIV virus; the positive results were reported to the Ohio Department of Health. Upon learning that he had been tested without his consent, plaintiff confronted Dr. Wise, who immediately denied ordering such a test; in fact, Dr. Wise denied any knowledge that the test had been performed. Plaintiff also contacted Judy McDermott, the head of Personnel Health, and Pinky Davis, another OSU employee, who both indicated that they would investigate the matter. When no information was forthcoming, plaintiff initiated this lawsuit, alleging violations of R.C. 3701.241 *et seq.*

The trial court found that the complaint sounded in negligence and that a reasonable person would interpret the requisition as a physician's order to perform an HIV test. Noting OSU's policy of requiring the physician to obtain informed consent (Joint Exhibit D), the court found that a reasonable person would have concluded that the physician had obtained the appropriate informed consent before ordering an HIV test. Accordingly, the trial court rendered judgment in favor of defendant. Plaintiff now appeals, asserting the following assignments of error:

"I. The trial court's interpretation of R.C. 370.244(B) [*sic*] was contrary to law.

"II. The judgment of the court of claims is contrary to the manifest weight of the evidence.

"III. The trial court abused its discretion in excluding the legislative intent testimony of a witness who drafted R.C. 3701.242."

■ By his first assignment of error, plaintiff argues that the trial court's interpretation of R.C. 3701.244(B) was contrary to law, insofar as it introduced a negligence standard in finding that a reasonable person could have concluded that Dr. Wise obtained the informed consent required by R.C. 3701.242. We agree. Plaintiff's action is not premised on negligence; rather, plaintiff brought an action premised upon the statutory cause of action set forth in R.C. 3701.244(B). R.C. 3701.242(A) provides:

"An HIV test *shall be performed only if,* prior to the test, *informed consent is obtained either* by the person * * * ordering the test *or* by the person or agency performing the test. Consent may be given orally or in writing after the person or agency performing *or* ordering the test has given the individual to be tested * * * the following information[.]" (Emphasis added.)

Clearly, R.C. 3701.242(A) was violated. R.C. 3701.242(A) provides that an HIV test *shall be performed only if* informed consent is obtained prior to the test. It is undisputed that informed consent was never obtained by Dr. Wise, Nurse Benner, or the person/agency performing the test. Thus, the HIV test should not have been performed. R.C. 3701.244(B) provides that:

"A person or an agency of state or local government that *knowingly violates division (A) of section 3701.242* * * * of the Revised Code *may be found liable in a civil action;* the action may be brought by *any individual injured* by the violation. Except as otherwise provided in division (C) or (D) of this section, the court may award compensatory damages and any equitable relief, including injunctive relief it finds appropriate. If an award is made in favor of the plaintiff, the judge may award reasonable attorney's fees to the plaintiff after a hearing to determine the amount of the fees." (Emphasis added.)

In a negligence cause of action, one must demonstrate a duty, a breach of that duty and an injury resulting proximately therefrom. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616–617. The trial court, in applying negligence principles, found that the duty to obtain informed consent from an individual prior to HIV testing was that set forth in R.C. 3701.242. However, it is noteworthy that R.C. 3701.244(B) provides that *any* individual injured by the violation may bring a civil suit. Thus, the statute does not limit recovery to the person to whom the "duty" of obtaining informed consent is owed in R.C. 3701.242(A). Any person injured by the violation of R.C. 3701.242(A) may bring an action under R.C. 3701.244(B). Accordingly, we find that the trial court erred in applying a negligence standard to the statutory remedy set forth in R.C. 3701.244(B).

However, this court is not convinced that such error was so prejudicial as to warrant reversal. Pursuant to R.C. 3701.244(B), plaintiff must also demonstrate a "knowing" violation of R.C. 3701.242(A). Plaintiff cites to this court several cases for his proposition that to "knowingly" violate the statute simply means that one knows of the existence of R.C. 3701.242(A) and acts contrary to it. Thus, plaintiff argues that because defendant's employees knew of the statute requiring informed consent, and did not obtain such informed consent, the "knowingly" requirement of R.C. 3701.244(B) has been satisfied.

However, a review of the cases cited by plaintiff leads this court to a different conclusion. Although these cases do not specifically analyze the meaning of "knowingly" for purposes of the statute at issue in this case, R.C. 3701.244(B), these cases generally require a showing of actual personal knowledge, or facts that would imply such awareness. In *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 533 N.E.2d 732, the court discussed what "knowingly" meant for purposes of demonstrating a violation of R.C. 4301.22(B). The court held that actual personal information was required, and that constructive knowledge alone would not suffice. *Id.* at 363, 533 N.E.2d at 736–737. Likewise, in *State ex rel. Carson v. Jones* (1970), 24 Ohio St.2d 70, 53 O.O.2d 116, 263 N.E.2d 567, a case dealing with a violation of R.C. 3501.38(D) and (F), the Supreme Court of Ohio found that the word "knowingly" should be given its ordinary and common meaning, "that one is aware of existing facts." *Id.* at 72, 53 O.O.2d at 117, 263 N.E.2d at 567.

In *Tonti v. Supt. of Banks* (Aug. 3, 1993), Franklin App. No. 92AP–1361, unreported, 1993 WL 303622, this court used a slightly different definition of "knowingly." In *Tonti*, a civil penalty was assessed against the appellant for knowingly violating R.C. 1125.18. The court required either actual awareness that one was violating the statute, or that facts be established from which such awareness could be inferred. Specifically, this court found that there were several reasonable inferences to support the trial court's finding that the knowledge element of R.C. 1125.18 was satisfied. *Id.*

The fourth case cited by plaintiff, *Bierlein v. Alex's Continental Inn, Inc.* (1984), 16 Ohio App.3d 294, 16 OBR 325, 475 N.E.2d 1273, involved a violation of the Consumer Sales Practices Act. In that case, the court required either actual awareness that one was violating the statute, or that facts be established from which such awareness could be inferred. *Id.* at 299, 16 OBR at 330–331, 475 N.E.2d at 1279–1280. The Supreme Court of Ohio, in *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933, disapproved *Bierlein*, holding that the language "knowingly committed an act or practice that violates this chapter" meant that the supplier need only intentionally do the act that violates the Consumer Sales Practices Act and that the supplier need not know that his conduct violates the law. *Id.* at 30, 548 N.E.2d at 936. The court further noted that the statutory language at issue in that case "does *not* state that the supplier must act with the knowledge that his acts violate the law * * *." (Emphasis *sic*.) *Id.*

At first blush, it would appear that the *Einhorn* court's definition of "knowingly" could be applied in the instant case to support plaintiff's position. However, we find *Einhorn* distinguishable from the case at bar. As previously noted, the narrow question presented in *Einhorn* was whether a consumer is entitled, under the Consumer Sales Practices Act, to an award of attorney fees if the supplier

knowingly committed an act or practice that violated R.C. Chapter 1345. Thus, the court's interpretation of the language of the particular statute at issue, the Consumer Sales Practices Act, was limited to the narrow issue before it. Indeed, in arriving at its interpretation, the court discussed the General Assembly's intention in drafting the statute, as well as the legislative purpose behind the statute. Thus, we are not compelled to apply the court's interpretation of the term "knowingly" for purposes of the Consumer Sales Practices Act to the statute before this court in the instant case, R.C. 3701.244(B).

Moreover, the *Einhorn* court recognized that the term "knowingly," as used in the Consumer Sales Practices Act, modified the phrase "committed an act or practice" but did not modify the phrase "violates this chapter." In contrast, the term "knowingly," as used in R.C. 3701.244(B), modifies the phrase "violates division (A) of section 3701.242 * * * of the Revised Code."

■ Thus, in applying the reasoning of the above cases, this court finds that plaintiff must demonstrate that defendant had actual awareness that R.C. 3701.242(A) had been violated, or, at the very least, plaintiff must establish facts from which knowledge could be inferred. *Tonti, supra.* A review of the record leads us to a contrary conclusion. Defendant had a policy in place by which the physician was required to obtain the necessary informed consent pursuant to R.C. 3701.242(A). Thus, in the instant case, the trial court could find that defendant did not have any actual knowledge that informed consent was not obtained. Nor were any facts presented which would imply that defendant had that knowledge. Clearly defendant only performs tests that are ordered by a doctor.[2] Secondly, defendant presumes, per the policy, that the doctor will obtain the informed consent. It is apparent to this court that a mistake was made by Nurse Benner, in that "*HIV+" was written in the "Other Tests" section of the requisition.

Defendant relied on this notation and performed the HIV tests. While defendant violated R.C. 3701.242(A) by performing the test, there is no evidence that defendant did this knowingly. The fact that defendant "knew" of the existence of R.C. 3701.242(A), and that informed consent must be obtained, is not sufficient to demonstrate a *knowing* violation, for purposes of R.C. 3701.244(B). Because plaintiff demonstrated a violation of R.C. 3701.242(A), but failed to

---

**2.** This court recognizes that the burden of obtaining informed consent does not always fall on the doctor ordering the test, as it did in the instant action per the policy of OSU Hospitals and Clinics. The language of the statute also encompasses situations where, for example, an employer requests such a test. Should the employer fail to obtain informed consent, the person or agency performing the test is required to do so. R.C. 3701.242. Our conclusion in this case is specific to the facts herein, and should not be construed so as to absolve those who perform these tests from any and all responsibility for obtaining informed consent.

demonstrate that the statute was "knowingly" violated, pursuant to R.C. 3701.244(B), plaintiff's first assignment of error is not well taken.[3]

■ By his second assignment of error, plaintiff argues that the judgment of the Court of Claims is against the manifest weight of the evidence. As noted in our earlier discussion, plaintiff clearly demonstrated that R.C. 3701.242(A) was violated. However, such a violation does not automatically lead to liability pursuant to R.C. 3701.244(B). Again, there must be a "knowing" violation, and knowledge of the statutory requirement alone is not sufficient to establish a "knowing" violation. *Tonti, Gressman,* and *Carson, supra.* Moreover, even if a "knowing" violation is demonstrated, R.C. 3701.244(B) does not impose automatic liability. See fn 3.

In this assignment of error, plaintiff also argues that Wise was the agent for defendant and, therefore, his failure to obtain consent is imputed to the hospital. Both parties cite *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, which held, in the syllabus, as follows:

"A hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, *the patient looks to the hospital, as opposed to the individual practitioner,* to provide competent medical care. (*Albain v. Flower Hosp.* [1990], 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph four of the syllabus, overruled.)" (Emphasis added.)

The *Clark* court relied on the analysis in *Grewe v. Mt. Clemens Gen. Hosp.* (1978), 404 Mich. 240, 251, 273 N.W.2d 429, 439, which stated in pertinent part:

" '[T]he critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with [the treating physician] or whether the plaintiff and [the treating physician] had a patient-physician relationship independent of the hospital setting.' "

In the instant action, there is evidence to support plaintiff's position that he looked to the hospital for treatment of his physical ailment, insofar as he was an employee of OSU and, in order to reap the most insurance benefits, he looked to

---

**3.** This court also notes that R.C. 3701.244(B) provides that a person or agency that knowingly violates R.C. 3701.242(A) *may* be found liable in a civil action. The statute does not automatically impose liability for a knowing violation. Thus, even if plaintiff had demonstrated that defendant knowingly violated R.C. 3701.242(A), defendant would not necessarily be held liable.

those preferred providers who rendered their services at the OSU Hospitals and Clinics. However, there is also evidence to support defendant's assertion that plaintiff had a prior patient-physician relationship with Wise, and that plaintiff came back to the clinic on March 4, the day after he was in the emergency room, because he was told that Wise would be in on March 4. Thus, defendant argues that the clinic was merely the situs where Wise would treat plaintiff.

More compelling, however, is the policy that defendant had in place regarding the procedures for ordering and performing HIV tests. Clearly, this policy required the physician to obtain the necessary informed consent for purposes of R.C. 3701.242(A). Thus, defendant placed this duty on the physician, and the physician was acting as defendant's agent for that purpose.

However, even though we have determined that Wise was acting as defendant's agent, the fact remains that plaintiff has failed to demonstrate that Wise "knowingly" violated R.C. 3701.242(A). If plaintiff wishes to hold defendant, as principal, responsible for the "wrongful" acts of its agent, Wise, then Wise must have violated the statute in some way. Assuming, *arguendo,* that Wise was the agent of defendant for purposes of obtaining informed consent, Wise never obtained informed consent, because Wise never ordered an HIV test. Thus, Wise could not have "knowingly" violated R.C. 3701.242(A) by his failure to obtain consent. Moreover, as pointed out by plaintiff, R.C. 3701.242(A) states that no test shall be *performed* unless informed consent is obtained. Thus, theoretically, Wise could have *ordered* a test, and *failed* to obtain informed consent, but until an HIV test was actually performed, there would be no violation of R.C. 3701.242(A).

For all of the above reasons, as well as the reasons previously articulated in the first assignment of error, plaintiff's second assignment of error is not well taken.

■ By his third assignment of error, plaintiff argues that the trial court abused its discretion in excluding the legislative intent testimony of Elliot Fishman, an attorney who assisted in drafting the bill which ultimately became R.C. 3701.241 *et seq.* Plaintiff proffered this testimony in an effort to demonstrate that R.C. 3701.242(A) requires that *both* the person/agency ordering the test *and* the person/agency performing the test, obtain the required informed consent. Initially, this court notes that the admission and/or exclusion of evidence is within the sound discretion of the trial court. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, 1384–1385. Such decision will not be disturbed on appeal unless the trial court abuses its discretion. An abuse of discretion connotes more than an error of law; it implies that a court's ruling is unreasonable, arbitrary or unconscionable. *Id.* at 165, 529 N.E.2d at 1385–

1386. See, also, *Lin v. Khan* (May 3, 1994), Franklin App. No. 93APE09–1252, 1994 WL 171205. R.C. 3701.242(A) provides:

"An HIV test *shall be performed only if,* prior to the test, *informed consent is obtained either* by the person * * * ordering the test *or* by the person or agency performing the test. Consent may be given orally or in writing after the person or agency performing *or* ordering the test has given the individual to be tested * * * the following information[.]" (Emphasis added.)

■■■ We do not agree with plaintiff's assertion that the statutory language above is ambiguous. The statute clearly provides that *either* the person/agency ordering the test *or* the person/agency performing the test must obtain the necessary consent. R.C. 1.42 provides that words and phrases shall be used in context and construed according to the rules of grammar and plain language. As noted by defendant, the word "or" connotes an alternative. The words "either, or" connote a choice between two alternatives. Where the language of a statute is plain and unambiguous, the statute is to be applied, not interpreted. See *Columbus & Franklin Cty. Metro. Park Dist. v. Shank* (1992), 65 Ohio St.3d 86, 103, 600 N.E.2d 1042, 1056–1057; *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus.

Plaintiff further argues that the trial court's construction of the statute leads to absurd results, insofar as "no liability would result to anyone since plaintiff's physician did not order the test and could not be liable and since Ohio State has a policy which requires only the physician ordering the test to obtain the consent. In this circumstance, no liability would be imposed under this construction of the statute since it is only the physician who has the responsibility to obtain the consent." This court disagrees. R.C. 3701.244(B) provides that anyone who knowingly violates R.C. 3701.242(A) may be held liable in a civil action. Thus, if defendant performs an HIV test with knowledge that informed consent has not been obtained by the physician, defendant could then be found liable for a knowing violation of R.C. 3701.242(A).[4]

Because we find that the statute, as written, is unambiguous, we cannot find that the trial court abused its discretion in refusing to admit the testimony of Fishman. For all of the above reasons, plaintiff's third assignment of error is not well taken.

---

4. The trial court found that it would be unduly burdensome to require the person or agency performing the test to call the physician to verify that informed consent had indeed been obtained. However, such a phone call would not be necessary if the physician ordering the test simply attached Form 10786 to the requisition ordering the test. In that manner, the laboratory performing the test could be assured that the informed consent had been obtained. (See October 1, 1990 Policy and Procedure Manual, at 4.)

For the foregoing reasons, plaintiff's assignments of error are overruled and the judgment of the Court of Claims of Ohio is hereby affirmed.

*Judgment affirmed.*

JOHN C. YOUNG and CLOSE, JJ., concur.