This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants-cross-appellees Steven and Rebecca Stultz ("appellants") have appealed from the orders of the Summit County Court of Common Pleas granting a directed verdict in favor of Robert Parks Sr., and denying their request for treble damages under the Ohio Consumer Sales Practices Act. Artistic Pools, Inc. ("Artistic Pools") has cross-appealed. This Court affirms.
 I.
Appellants entered into a contract with Artistic Pools for the installation of an in-ground pool. Almost immediately after construction was completed, appellants began noticing problems and contacted the owner of Artistic Pools, Robert Parks Sr. ("Parks"), who was the sales representative with whom appellants had contracted. Because the problems were never resolved to their satisfaction, appellants filed suit against Artistic Pools and Parks asserting breach of contract, breach of warranty, and various violations of the Consumer Sales Practices Act ("CSPA").
The case was tried to a jury. At the conclusion of appellants' case, the trial court sua sponte directed a verdict in favor of Parks. The jury, after answering a number of interrogatories, returned a general verdict in favor of appellants for $30,000. The trial court entered judgment in favor of appellants, stating that the jury awarded appellants $30,000 based on the jury's findings of several CSPA violations. The court scheduled a hearing on the issue of treble damages and attorney fees, but the court subsequently denied appellants' request without holding a hearing.
Appellants have timely appealed, and have asserted two assignments of error. Artistic Pools has cross-appealed, and has also asserted two errors for our review.
 II. FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO AWARD THE STULTZS' [sic] TREBLE DAMAGES AS REQUIRED BY THE CONSUMER SALES PRACTICES ACT[.]
In their first assignment of error, appellants contend that the trial court erred in refusing to award treble damages under the CSPA. Specifically, appellants assert that because they met the prerequisites for treble damages, the trial court was required to grant their motion. Artistic Pools argues that the trial court properly denied appellants' request for treble damages because the jury did not find any CSPA violation. Appellants have countered, pointing to the trial court's April 26, 2000 judgment entry which states that Artistic Pools committed five separate CSPA violations. This Court affirms the judgment of the trial court, notwithstanding the lower court's faulty reasoning.
In order for a trial court to award treble damages, the finder of fact must have found that the supplier committed either an unfair or deceptive sales practice under R.C. 1345.02, or an unconscionable sales practice under R.C. 1345.03. A review of the jury instructions and the jury's answers to the interrogatories in the present case reveals that the jury did not find that Artistic Pools had committed an unfair, deceptive, or unconscionable sales practice. Therefore, the trial court was without authority to treble the damage award.
After instructing the jury on unworkmanlike construction and breach of contract, the trial court commanded the jury to determine if Artistic Pools had violated the CSPA by committing any unfair or deceptive acts. The court instructed the jury that there were four ways in which the jury could find that Artistic Pools violated the CSPA — if the jury found: (1) that Artistic Pools had misrepresented that the pool had been supplied in accordance with a previous representation; (2) that Artistic Pools had misrepresented that the pool was of a particular standard, quality, grade, style, prescription, or model; (3) that Artistic Pools had misrepresented that the pool had sponsorship, approval, performance characteristics, accessories, uses or benefits; or (4) that Artistic Pools had performed its work in an unworkmanlike manner and if Artistic Pools had been unfair or deceptive in such performance.[1] A review of the jury's interrogatories shows that the jury did not find any of these four.
Interrogatory number one was the only question posed to the jury concerning any of the first three ways in which the court told the jury that it could find a CSPA violation:
 Interrogatory No. 1: Do you find by a preponderance of the evidence that [Artistic Pools] misrepresented the quality and performance characteristics of their products or services?
The jury unanimously answered NO. Interrogatory number two addressed part of the fourth way in which the court instructed the jury that it could find that Artistic Pools had committed a CSPA violation:
 Interrogatory No. 2: Do you find by a preponderance of the evidence that [Artistic Pools], failed to perform services in a competent, satisfactory and workmanlike manner?
 Seven of the eight jurors answered YES. However, the jury was not asked to find whether Artistic Pools had been unfair or deceptive when it failed to perform in a workmanlike manner. This is important because the court's instruction to the jury was: "You must determine whether [Artistic Pools] committed any unfair or deceptive acts in the transaction with [appellants]. * * * You can find that if a contractor performed his work in an unworkmanlike manner that he committed an unfair or deceptive act or practice." (Emphasis added.)
Furthermore, when asked whether Artistic Pools "committed any other unfair or deceptive acts or practices in connection with the [CSPA]", the jury answered NO. The jury also left interrogatory number 9 blank, which asked: "If you find that [Artistic Pools] committed any unfair or deceptive act or practice, do you further find that such act or practice was committed knowingly, whether or not [Artistic Pools] knew that the act or practice violated the law? YES ___ or NO ___."[2] Moreover, the findings that the jury did make against Artistic Pools are consistent with breach of contract and breach of warranty, and the verdict rendered was a general verdict in favor of appellants on "the[ir] issues."
 This Court determines that because the jury did not find a CSPA violation, the trial court was without authority to treble the damage award. We must emphasize, however, that the basis for the trial court's refusal to award treble damages is completely erroneous.
 The lower court examined the actions of Artistic Pools, and found that the "acts * * * were neither malicious nor committed in bad faith[,]" and that appellants had "already been substantially compensated * * *" by the $30,000 judgment. Based on these findings, the trial court denied appellants' request for treble damages, stating that "the Court believes that it would be unjust and inequitable to further penalize [Artistic Pools] by requiring the payment of treble damages[.]" Even if the jury had found a CSPA violation, the denial of treble damages based on the court's belief that Artistic Pools had acted in good faith, that appellants had been substantially compensated by the jury's award, and that treble damages would be an unjust penalty for CSPA violations, is in direct contravention of the statute.
The CSPA was enacted to "[p]rotect consumers from suppliers who * * * commit deceptive acts or practices, or commit unconscionable acts or practices[,]" and to "[e]ncourage the development of fair consumer sales practices." OAC 109:4-3-01. A consumer who has been the victim of deceptive acts or practices may choose between rescission or treble damages. See R.C. 1345.09. Recovery under the CSPA, therefore, is not limited to making the consumer whole. When a plaintiff has made its election for damages and has met the prerequisites for treble damages under R.C. 1345.09(B), "the statute does not make it discretionary for a trial court to award either actual damages or treble damages[.]"Armstrong v. Kittinger (Sept. 21, 1994), Summit App. No. 16124 and 16378, unreported, at 19. Good faith and substantial compliance do not provide a defense to an award of treble damages. Andrews v. Scott PontiacCadillac GMC, Inc. (1991), 71 Ohio App.3d 613, 621. The trial court is not free to "exercise its sound discretion in fashioning a remedy appropriate to the facts[.]" See Bierlein v. Alex's Continental Inn, Inc. (1984), 16 Ohio App.3d 294, 301.
For the foregoing reasons, the judgment of the trial court is affirmed, albeit for different reasons than expressed by that tribunal.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY DIRECTING A VERDICT ON THE STULTZS' CONSUMER SALES PRACTICES ACT CLAIM AGAINST ROBERT PARKS[,] SR. WHEN THIS DEFENDANT WAS A SUPPLIER WITHIN THE MEANING OF R.C. 1345.01(C)[.]
In their second assignment of error, appellants assert that the trial court erred in directing a verdict at the close of appellants' case in favor of Parks. Specifically, appellants argue that because reasonable minds could have found that Parks is a supplier under the CSPA and that Parks personally violated the Act, the trial court erred in dismissing Parks as a party. We find any error in this regard to be harmless.
Because the decision to grant or deny a directed verdict involves a question of law, this Court must review the trial court's decision denovo. Nichols v. Hanzel (1996), 110 Ohio App.3d 591, 599. The standard that is employed is clear:
 In ruling on a directed verdict — or, in our case, considering such a ruling on appeal — a court must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds can come to but one conclusion on the evidence submitted, that conclusion being adverse to the non-moving party. If reasonable minds can reach different conclusions, the matter must be submitted to a jury. The court considers the motion without weighing the evidence or determining the credibility of witnesses. A motion for a directed verdict raises a question of law because it examines the materiality of the evidence rather than the conclusions to be drawn from the evidence. Thus, the court does not determine whether one version of the facts presented is more persuasive than another; rather, it determines whether only one result can be reached under the theories of law presented in the complaint.
(Citations omitted.) Cox v. Oliver Machinery Co. (1987), 41 Ohio App.3d 28,29.
In the instant case, the trial court directed a verdict for Parks based on the court's belief that personal liability could not attach since Parks was a corporate officer. However, "[u]nder the CSPA, if an individual employee engages in unfair consumer acts and deals directly with the consumer, that person can be held personally liable, notwithstanding that the individual acted as an agent of his employer."Inserra v. J.E.M. Building Corp. (Nov. 22, 2000), Medina App. No. 2973-M, unreported, at 11, citing Sovel v. Richardson (Nov. 15, 1995), Summit App. No. 17150, unreported, at 6-7. See, also, Grayson v. CadillacBuilders, Inc. (Sept. 14, 1995), Cuyahoga App. No. 68551, unreported;Gayer v. Ohio Business Trading Association (July 7, 1988), Cuyahoga App. No. 54897, unreported. "In order to hold a corporate officer personally liable for his actions in violation of the Consumer Sales Practices Act, the evidence must show the officer took part in the commission of the act, specifically directed the particular act to be done, or participated or cooperated therein." Grayson, supra, citing State ex rel. Fisher v.American Courts, Inc. (July 21, 1994), Cuyahoga App. No. 65939, unreported. See, also, Gayer, supra (holding that if a corporation committed a deceptive sales act as a result of representations made by its president, then the president is also liable). The employee or officer's "liability flows not from his status as [an employee] * * * or even an officer * * *, but from his personal actions in violating CSPA."Inserra, supra.
In Grayson, the appellate court clarified that:
 The Consumer Sales Practices Act does not change the existing common law of tort, nor does it change the common law rule with respect to piercing the corporate veil. A corporate officer may not be held liable merely by virtue of his status as a corporate officer. It does, however, create a tort which imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities.
Id. at fn. 1.
This Court concludes that the trial court erred as a matter of law in dismissing Parks at the close of appellants' case with respect to the CSPA claims. Nevertheless, this Court finds that the lower court's error was harmless because the jury did not find that Artistic Pools had committed a CSPA violation. Accordingly, there was no violation upon which the jury could have found Parks personally liable.
Appellants' second assignment of error is overruled.
 FIRST CROSS-ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY SUBMITTING THE INCORRECT MEASURE OF DAMAGES TO THE JURY AS REQUIRED BY THE LAW OF THE NINTH DISTRICT.
In its first cross-assignment of error, Artistic Pools argues that the trial court committed reversible error by refusing to admit a jury instruction that the measure of damages is the diminution in value. Specifically, Artistic Pools asserts that the proper measure of damages should have been:
 The reasonable cost of restoration, plus the reasonable value of the loss of use of the property between the time of the injury of the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure.
The record shows that neither party offered evidence as to the difference in market value. Faced with the same issue, the same proposed jury instruction, and a lack of evidence as to the difference in market value, in Atlas Homes Corp. v. Fyfe, this Court held:
 Even if we were to agree that the measure of damages urged by Atlas was correct, it would not have been entitled to such an instruction because neither Atlas nor the Fyfes offered any evidence as to the difference in market value. Therefore, any "measure of damage definition pertaining to market value was not a factual issue and needed no jury instruction from the trial judge nor consideration by the jury." Stony Ridge Assn. v. Auerbach [(1979), 64 Ohio App.2d 40, 48].
 (Oct. 24, 1990), Summit App. No. 14413, unreported, at fn. 1. Accordingly, we find that the trial court did not err in refusing to give a jury instruction on diminution in value.
Furthermore, this Court cannot reach the issue of what is the proper measure of damages in a case such as this because Artistic Pools has not assigned the trial court's denial of its motion for a directed verdict as error.
Appellee's first cross-assignment of error is overruled.
 SECOND CROSS-ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN SUBMITTING ONLY ONE JURY VERDICT FORM TO THE JURY.
In its second cross-assignment of error, Artistic Pools maintains that the trial court erred in failing to present the jury with separate verdict forms for each cause of action alleged. However, as no objection was raised to the use of the general verdict form, Artistic Pools has waived any such objection. See State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus.
The second cross-assignment of error is overruled.
 III.
Both of appellants' assignments of error, and both of the cross-assignments of error are overruled. The judgment of the court of common pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants/Cross-Appellees.
Exceptions.
LYNN C. SLABY, SLABY, P. J. WHITMORE, J. CONCURS.
[1] The trial court gave the jury the following instructions concerning the CSPA:
 The next aspect of the lawsuit is the law to be applied to the Plaintiffs' claim under the Ohio Consumer Practices Act.
 The Consumer Sales Practices Act is a statute enacted by the Ohio legislature which regulates how businesses must treat their customers.
 The Consumer Sales Practices Act provides that no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.
* * *
 You must determine whether Defendant committed any unfair or deceptive acts in the transaction with Plaintiffs.
 An act or practice violates the Consumer Sales Practices Act when it occurs before, during, or after the transaction.
 The Consumer Sales Practices Act applies at all stages of a transaction including the solicitation or negotiation stage.
 The Act applies at the time from the initial contact between the supplier and the consumer until the relationship terminates.
 You can find that if a contractor performed his work in an unworkmanlike manner that he committed an unfair or deceptive act or practice.
 In addition, all unfair and deceptive acts by suppliers violate the Consumer Sales Practices Act.
 The law states that it is an unfair or deceptive act for a supplier to represent any of the following to a consumer:
 (1) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.
 (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not.
 (3) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have.
 An act or practice is unfair or deceptive if it has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.
 Intent to deceive is not an element of an unfair or deceptive act.
 The purpose of the rules relating to consumer transactions is to protect consumers from suppliers who commit unfair or deceptive acts or practices and to encourage the development of fair consumer sales practices.
 The law requires that consumer rules be interpreted and applied liberally to promote the policy of fairness and discourage deception.
 If you find that Defendant committed an act or practice that violates the Consumer Sales Practices Act you will proceed to determine the amount of damages suffered by the Plaintiffs as a result of the violations. * * *
(Emphasis added.)
[2] The interrogatories and the jury's answers thereto are:
 Interrogatory No. 1: Do you find by a preponderance of the evidence that [Artistic Pools] misrepresented the quality and performance characteristics of their products or services?
The jury unanimously answered NO.
 Interrogatory No. 2: Do you find by a preponderance of the evidence that [Artistic Pools], failed to perform services in a competent, satisfactory and workmanlike manner?
Seven of the eight jurors answered YES.
 Interrogatory No. 3: Do you find by a preponderance of the evidence that [Artistic Pools] failed to correct substandard work or defects?
Seven of the eight answered YES.
 Interrogatory No. 4: Do you find by a preponderance of the evidence that [Artistic Pools] stalled, evaded, or failed to honor any legal obligations in the transaction with [appellants]?
Seven answered YES.
 Interrogatory No. 5: Do you find by a preponderance of the evidence that [Artistic Pools] failed to comply with any warranties offered to the [appellants]?
The jury unanimously answered YES.
 Interrogatory No. 6: Do you find by a preponderance of the evidence that [Artistic Pools] failed to perform repairs to the pool in a timely manner?
Six jurors answered YES.
 Interrogatory No. 7: Do you find by a preponderance of the evidence that [Artistic Pools] committed any other unfair or deceptive acts or practices in connection with the consumer transaction with [appellants]?
Six jurors answered NO.
 Interrogatory No. 8: If the answer to Interrogatory No. 7 is yes, please list each and every other unfair or deceptive act or practice you find was committed by [Artistic Pools].
 The jury left this interrogatory blank, as they answered NO to number 7.
 Interrogatory No. 9: If you find that [Artistic Pools] committed any unfair or deceptive act or practice, do you further find that such act or practice was committed knowingly, whether or not [Artistic Pools] knew the act or practice violated the law?
The interrogatory was left blank.
 Interrogatory No. 10: If you find that [appellants] have proven their case by a preponderance of the evidence under any of the above interrogatories (1-9), indicate the damages that you award to [appellants] below.
 $30,000 was written in the space provided, and seven of the jurors signed.